**OILMEN'S RECIPROCAL ASS'N v. HARRIS et al. (No. 8756.)**

Court of Civil Appeals of Texas. Galveston. Feb. 17, 1927.

Rehearing Denied March 10, 1927.

1. **Master and servant ☞405(6)—Evidence in compensation case held to permit inference of permanent loss of use of hand, notwithstanding expert medical testimony to contrary.**

In trial of compensation case, where plaintiff testified and showed that he could no longer use his right hand, which had been mashed in feeding sacks through a wringer, *held* that jury might infer permanent loss of use of the hand, notwithstanding that two medical experts gave their opinions that plaintiff had not suffered a permanent disability.

2. **Trial ☞351(2)—Where one of five requested issues embraced in special charge was improper, refusal of whole charge held no error.**

Where defendant requested a special charge embracing five separate issues, one of such issues being improper, refusal of them all as a group *held* correct practice.

3. **Trial ☞350(3)—Where amount of workman's average weekly wage was undisputed, refusal of court to submit question to jury held proper.**

Refusal of court in compensation case to submit issue requested by defendant as to what plaintiff's average weekly wage was before his injury *held* proper, where the amount received was undisputed.

4. **Trial ☞351(5)—Refusal to give definitions and submit issues which were fully covered in general charge held no error.**

Where, in compensation case, definitions of partial and total incapacity and requested issues were all fully covered in general charge, refusal of special charge embracing such definitions and issues was not error.

5. **Master and servant ☞385(20)—Lump compensation held payable only in case of total permanent incapacity (Workmen's Compensation Act, pt. 1, § 15 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246-33]).**

Under Workmen's Compensation Act, p. 1, § 15 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246-33), lump sum settlements for injuries are only payable where there is total permanent incapacity.

─────────────

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 77 Tex. 657.

**6. Master and servant ⚖️405(6)—Evidence of permanent loss of use of hand held not to show "total permanent incapacity" (Workmen's Compensation Act, pt. I, § 15 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—33]).**

Evidence showing no other incapacity than permanent loss of the use of workman's right hand *held* not to show total "permanent incapacity" within the meaning of Workmen's Compensation Act, pt. 1, § 15 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—33).

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Total Incapacity.]

**7. Master and servant ⚖️385(12)—Permanent loss of use of hand held "partial incapacity" (Workmen's Compensation Act, pt. I, § 12 [Vernon's Ann. Civ. St. Supp. 1918, art. 5246—21]).**

Where the evidence showed permanent loss of the use of workman's right hand, but no impairment aside from that, injury was held only a "partial incapacity," to be classified under the Workmen's Compensation Act, pt. 1, § 12 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—21).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partial.]

Appeal from District Court, Galveston County; J. C. Canty, Judge.

Suit by D. C. Harris and others against Oilmen's Reciprocal Association. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

Mart H. Royston, of Galveston, and H. F. Montgomery, of Houston, for appellant.

Geo. G. Clough and Thos. C. Turnley, both of Houston, for appellees.

GRAVES, J. This appeal is from the court's award to appellee of a lump sum of $2,069.50 as the present value—less $8 earned subsequent to the accident—of compensation for 150 weeks at the rate of 60 per cent. of his average weekly wages, or $13.85 per week, which a jury found was due him for injuries sustained in the course of his employment resulting in the loss of the use of one hand.

Appellant, carrier of the risk for appellee's employer, while admitting the injury in the course of employment and its liability for some weekly compensation at the rate given, assails this judgment against it on these grounds:

(1) The trial court had no jurisdiction to entertain the cause at all, because there had been no final judgment, decree, or award of the Industrial Accident Board justifying a resort to the courts.

(2) There was no evidence that appellee had suffered a permanent total incapacity to labor within the meaning of the Compensation Law; the uncontradicted testimony being that he had not.

(3) The court committed reversible error in refusing to submit to the jury the five special issues requested by appellant.

(4) Testimony to the effect that appellee was a married man with a wife and two young children, owned no property, and had no means of earning a living other than by working as a day laborer, was improperly admitted.

(5) There was an irreconcilable conflict in different portions of the verdict, in that the jury separately found that appellee had as to the same injury suffered both a total and a partial permanent incapacity.

(6) The court was without authority to award a lump sum; this being neither a case of death nor of permanent total incapacity to labor.

After careful consideration of the record, and of oral as well as written arguments thereon, we conclude that only the second and sixth of these contentions can be sustained.

1. At a former term, the trial court's judgment was affirmed here, upon a holding that it both did have jurisdiction to hear the cause and authority to award appellee a lump sum recovery; on rehearing, however, convinced of error in the latter conclusion, and made somewhat doubtful as to the former, that judgment was set aside, the opinion withdrawn, and the question as to the jurisdiction of the court below certified to the Supreme Court. That court has recently answered that our former holding sustaining the jurisdiction was correct. Oilmen's Reciprocal Association v. Harris, 288 S. W. 809.

[1] 2. Appellant's second proposition of law to the effect that there was no evidence of total permanent incapacity to labor within the meaning of the Compensation Law upon appellee's part is sound, but the argument made thereunder, that there was also no proof of any permanent injury at all, even to his hand, is not; the claim in that connection that "there is not one scintilla of evidence from the plaintiff nor from any witness in this case that the plaintiff was permanently injured," rests in part at least upon an unusual estimate of the value of expert medical opinion only, as against direct testimony of the injured man as to the actual occurrence of the accident, its effect upon his fingers, hand, and arm at the time, as well as subsequently, together with profert in court on the trial of all these members, under full statement from him of their condition then and throughout the period of injury. The medical testimony was from two eminent members of the profession, both instructors in surgery at the medical department of the University of Texas, who were appointed by the court at appellant's request to examine the appellee during the trial, and was given as expert opinion only, neither

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

physician having before seen or examined the man. Based upon that joint examination, both gave it as their opinions that the appellee had not suffered a permanent disability, that he could use his fingers and hand, if he desired to do so, and, in effect, that he was malingering in pretending that he could not do so.

As against this, the appellee himself testified:

That, while feeding sacks into a wringer—a big machine having three close-together steel rollers to it—his right hand up to his wrist was caught and drawn into the machine, mashing it and his fingers practically flat. That, "as to the effect on my hand of that machine drawing it in there, it just got stiff so I can't do anything with it, and it continues to worry me all the time and I am unable to use it at all. It is now in bad condition. * * * It is stiff; I can't lift it up to my shoulder at all. The first finger I can't close against the palm; no, sir. No, sir; I can't move the three remaining fingers. I have not been able to move them since the date of the injury. No, sir; I cannot close the other three fingers against the palm of my hand; I cannot pick up anything with it, no, sir—no weight with that hand. I can't even put my shoulder with it. I am putting my hands together for the jury to see. With reference to the three fingers of my right hand, as to whether they are straight and in line with the three corresponding fingers of my left hand, I don't think they are; they are crooked. They crook kind of to the right. The first finger is straight, and the other three fingers are crooked. No, sir; all my four fingers do not lie together on my right hand like they do on my left hand. Three of them lie close together all the time. The other leans to it sometimes. I can straighten it out a little, but not to do no good. Since the date of the injury, I have not been able to perform any manual labor with that hand. No, sir; since the date of the injury I have not performed the same character of labor that I performed before I was injured. * * * No, sir; I cannot raise my arm up without suffering pain or inconvenience. In the morning when I wake up, this arm is perfectly dead, and in the day when I stirs around and heat some water it has some feeling in it. No, sir; I am deliberately holding my arm in that position; I am holding my arms up, as you request. There is a difference in the size of my arms; this arm (indicating the right) is smaller now; it used to be the largest. Both sleeves are rolled up, and I am holding my arms so the jury can see them. No, sir; I can't raise that right arm without trembling. * * * Yes, sir; I have some scars on my hand up here. I haven't been able to do anything except piddling around, * * * such as sweeping such as I could do with one hand, take it out and burn it and put it in the garbage can, and sometimes whip a rug * * * I tried to do some trucking. * * * I was not able to do that; it was this coming Monday three weeks ago; I got a job at the S. P., and didn't make the first trip. I couldn't do the trucking because I couldn't use but one hand, and it required both hands. * * * I couldn't even brake the truck down with one hand. As to trying to close the fingers of my right hand, this is the best I can do (indicating to the jury). Yes, sir; I say now I can't close the fingers of my right hand. Dr. Danforth dressed my hand at Texas City; he treated my hand with something; I don't know what, and bound it up and put a stick, a board, a part of a cigar box. The board was about as wide as three fingers, and he bound it up to that, and every week he dressed it once a week. At the time my hand came out of the bag-washing machine, it was perfectly flat; it was pressed into the machine with the rest of the sack. * * * My hand was bound to that board a little better than three weeks. Dr. Danforth took it off. The foreman took me upstairs and wrote an order for me to go to Dr. Danforth; Mr. Lynch was the man that carried me upstairs. He took me to the timekeeper. * * * Mr. Lynch was the first man got to me when the accident happened."

It was otherwise shown that the accident happened at Texas City on June 18, 1924, and that a written report of it of the same date was made by appellee's employer through its timekeeper to the Industrial Accident Board at Austin, reciting the fact of its occurrence, describing the injury as being a mashed hand caught in feeding sacks through a wringer, and stating that the Mr. Lynch and Dr. Danforth so referred to by the appellee were at the time it happened the eyewitness to the accident and the physician who attended the patient, respectively. The testimony was received by the court on November 7, 1924, more than one-third year after the injury.

To say the least of it, we think this evidence in behalf of the appellee clearly raised the issue as to whether or not he had suffered the permanent loss of the use of his hand. It is true that neither he himself, nor any physician for him, in so many words, stated that his injuries were or would be permanent, but that would have been the mere pronouncement of a conclusion that must follow anyway the premises given. It was, in other words, one of those legitimate inferences from the facts that were in evidence. Presumably the jury were men of ordinary intelligence, and as such were entitled to use their common sense upon all the evidence and draw the same conclusions from their observance of physical conditions, personal appearance, and the value of human testimony, as other rational persons in like circumstances might do; they were not limited to the mere conclusions of the two physicians, however buttressed by professional learning and experience. This court fully appreciates the evidentiary value of expert medical opinion, but to say, in such circumstances as here obtained, that it must as a matter of law be held to have annihilated all the inferences average intelligence might draw from actual observation, physical facts, and the statements of other credible witnesses, is to accord it too near an approach to infallibility.

[2] 3. The was no error in the refusal of appellant's special charge No. 2, embracing its five requested issues; all these issues, along with two definitions, were included in a single document, and the assignment and proposition presenting the matter both complain of the refusal of the charge as an entirety; if, therefore, any one of the designated issues was improper, the refusal of them all as a group was proper practice. Ewing v. Foley, 115 Tex. 222, 280 S. W. at page 503, par. 5, 44 A. L. R. 627; Railway v. Biggs, 283 S. W. 627, decided by this court by opinion filed February 18, 1926; Debes v. Greenstone (Tex. Civ. App.) 247 S. W. 289.

[3] That No. 4 inquiring what the appellee's average weekly wage was before his injury, did not raise a question for the jury, is demonstrated by the fact that the undisputed evidence showed the amount to be $13.-85, as the court correctly recited in this paragraph of its charge to the jury:

"The question as to whether the plaintiff was injured while in the course of his employment by the Texas Sugar Refining Company, and the amount of compensation to which he might be entitled as based on his weekly wages per week, are not questions for your determination; these facts being admitted by the defendant in its reports to the Industrial Accident Board, offered in evidence, and not contradicted or disputed, and hence binding on the defendant."

[4] Moreover, the two definitions being mere repetitions of those given by the court of "partial and total permanent incapacity," as well as the other four requested issues, were all fully covered in the general charge; it seems unnecessary, by explicit statement, to demonstrate that all these matters, in other forms and language, were sufficiently presented for the jury's consideration, but this much is pointed out:

The first of them, asking whether appellee had been so injured as to incapacitate him from laboring at his employment on full wages for longer than one week, was fully submitted in the court's questions Nos. 1, 4, 8, 9, 10, and 14; the second, asking how long after the first week such incapacity—entire or partial—as had been found under the preceding inquiry continued, aside from having the vice of duplicity, was fairly comprehended within the court's queries Nos. 1, 2, 3, 6, 7, and 12; the third, asking on the basis of previous answers how long appellee had been at total and partial disability to labor, in addition to the same objection, was covered generally by several of these given charges, and further specially as to partial disability by particular questions Nos. 3, 7, and 12; the fifth, asking on the basis of a partial incapacity for the difference in appellee's average weekly wages before and after the injury, was properly embodied in the court's special issues numbered 2, 3, and 14.

4 and 5. The fourth and fifth contentions become immaterial in view of our holding under the second and sixth that the undisputed evidence failed to show a "total permanent incapacity" entitling appellee to a lump sum settlement; brief statement of the ground of that conclusion is now added.

[5] 6. The statute giving the right of lump sum settlement, being section 15, pt. 1, of the Compensation Act, is in these words, the underscoring being our own:

"*Lump Sum for Death or Total Permanent Incapacity.*—In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board hereinafter created. This section shall be construed as excluding any other character of lump sum settlement save and except as herein specified; provided, however, that in special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association *in the cases provided for in this section* to redeem their liability by payment of a lump sum as may be determined by the Board." Vernon's Ann. Civ. St. Supp. 1918, art. 5246—33.

The plain meaning of this is that lump sum settlements are only payable in cases of "total permanent incapacity," as that condition is elsewhere defined in the act, whether they be accomplished by agreement of the parties, or through compulsion of the insurer at the hands of the Accident Board or the court.

[6, 7] In this instance there was no such incapacity; the cause was tried and submitted in the special issues to the jury upon the theory that appellee's injuries, at most, caused the permanent loss of the use of his right hand. Considering the evidence as a whole, there is none of any probative force indicating that they either disqualified him from performing the usual tasks of a workman not requiring the use of both hands or impaired the usefulness of any other parts or functions of his body. His was therefore a case of permanent incapacity of that member, but only a partial one as referable to his entire body, and fell under the classification specified in section 12, pt. 1, of the act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—21), and not under the quoted section 15, pt. 1, as the trial court erroneously determined in awarding the lump sum recovery. This was the holding of the Court of Civil Appeals for the Ninth District, as to a like injury, in Insurance Ass'n v. Moreno, 260 S. W. 283, and, while that determination was not complained of upon an appeal to the Supreme Court, the latter, through the Commission of Appeals, in effect approved that characterization of the cause in this declaration relative to Moreno's injury, "the loss of a limb is a permanent incapacity, but only a partial one."

Insurance Ass'n v. Moreno (Tex. Com. App.) 277 S. W. 84.

These conclusions require the elimination of the lump sum awarded, leaving the appellee for the loss of the use of one hand the recovery of the $13.85 per week for 150 weeks, commencing August 2, 1924, together with interest thereon at the rate of 6 per cent. per annum from November 8, 1924, until paid, and that the trial court's judgment, after being so reformed, be otherwise in all respects affirmed; that order will enter.

Reformed and affirmed.