**ANGELINA CASUALTY COMPANY,**
Appellant,

v.

**Mack M. SPENCER, Appellee.**

No. 6164.

Court of Civil Appeals of Texas.

Beaumont.

Feb. 13, 1958.

Rehearing Denied March 5, 1958.

Collins, Garrison, Renfrow & Zeleskey, Lufkin, for appellant.

Reavley & Barber, Jasper, for appellee.

R. L. MURRAY, Chief Justice.

This is an appeal from a judgment in the district court of Jasper County in a Workmen's Compensation case.

Appellee Spencer received judgment on the jury's verdict for total disability benefits for 300 weeks. He was injured while working at loading logs onto a railroad car. All the evidence showed he was injured in the course of his employment, but the controversy on the trial and on appeal is in regard to the extent and duration of his disability.

The appellant brings its appeal under six Points of Error.

By the first three points it says that there was no evidence to support the jury's finding that Spencer suffered total incapacity for 300 weeks; that the evidence was insufficient to support such finding, and that the jury's finding of such extent and duration of disability was so contrary to and against the great weight and overwhelming preponderance of the evidence as to be manifestly wrong and unjust, and demonstrated that the jury was actuated by passion, prejudice or some improper influence or consideration in arriving at its answer.

Determination of these three points requires an examination of the evidence. We take the following résumé from the appellant's brief:

Regarding the accident and injury, Mack M. Spencer, appellee, testified on direct examination to the effect that he was 44 years old, that his work had been sawmilling, construction work, farming, just common hard labor, that he had sustained two previous injuries on jobs, to the right foot and right knee; that on the date in question he was working under Mr. Ed Bailey, foreman for Southern Pine Lumber Company, near Evadale, where appellee was hooking tongs at the loader; that logs were decked up on the ground by the side of the railroad track, that appellee and another workman each handled a tong on the end of a 90 foot rope attached to the mechanical loader, that each of the two men hooked their tongs in one end of a log and the loader operator pulled the log up to load it onto the railroad car; that appellee went up on a deck of logs and hooked a log which, when pulled by the loader operator, struck the log appellee was standing on and threw appellee headfirst 4 or 5 feet off the deck, a log "come up that way and struck me right across there in the back; and the one that was on the ground, I struck it right over that eye," left eye, that appellee supposed that the log that hit him was on the ground, that something hit him but he did not know whether it was a log on the ground but as he was falling something struck him, that when appellee knew anything he had a cut right across the eye, that he hit his head on something and a log hit him in the back, that appellee does not know what happened when he hit the ground and he was unconscious about 45 minutes and didn't know anything until he got to Dr. Poshataske's office in Silsbee.

On cross-examination appellee testified to the effect that Oscar Lee Jones was working as his partner on the occasion in question, also hooking tongs, but Jones did not go up on the deck of logs, that appellee was not positive whether Jones was on the ground or up on the deck; that Mr. Ed Bailey was operating the loader, appellee hooked the particular log and got back out of the way, turned, Mr. Ed pulled and the log or two or three logs that appellee was standing on turned, kicking appellee's feet from under him; appellee did not jump but fell from the deck, right off the end of the deck, headfirst, right down there where

there lay a bunch of logs, that there was a space of open ground where appellee went off, and down from the stack or deck from which appellee fell there was another similar stack of logs; appellee does not know how he hit the ground, before he went off the deck or when he fell, something hit him in the back; when he fell, appellee saw a gum log coming up behind him, one he had been standing on, and something struck his back as he was falling, that appellee was going away from the end of the logs when he went off the deck; that as far as he knows or thinks, no log fell on him on the ground, he landed on the ground right in between logs, that some logs in decks run out longer than others and he supposes it must have been that he struck the end of one of those logs, that his head was going toward the end of the other nearby stack of logs, and the cut over appellee's eye could have been from striking one of the logs in the other deck, that appellee was knocked unconscious and recalls no conversation or did not know anything until arriving at the doctor's office in Silsbee.

Regarding his medical treatment, appellee testified further on direct examination to the effect that when first attended by Dr. Poshataske in Silsbee that appellee complained about his head and back; X-rays were made by this doctor and appellee's back was taped up and six stitches taken in the cut on appellee's head; that this tape on appellee's back was 2 inch tape or inch and a half tape and was 6 or 8 inches wide all the way around appellee's back; that appellee did not remain under this doctor's care after that time, but saw Dr. Harris in Pineland on the following day, July 12, 1956, complaining to Dr. Harris of his head and back, that he remained under this doctor's care until sometime in September, 1956, the treatment here consisting of redressing the cut over the eye, removal of the stitches from that cut, heat to the back, tablets or pills; that Dr. Harris removed the bandage or tape from appellee's back about the fourth or fifth visit to this doctor; that he was sure Dr. Poshataske put adhesive tape on his back, that that doctor or his nurse put it on there and that Dr. Harris took it off; that appellee hired his attorney in this case on July 23, 1956, but appellee did not know that compensation was not payable under the law until he had been off from work 14 days; that his attorney in this case referred him to Dr. Allamon, but it was three or four weeks later before appellee went to Dr. Allamon, made only two visits to that doctor, and has been to no doctor for treatment since September, 1956.

As to his bodily complaints at the time of the trial, January 30, 1957, appellee testified in substance that his head bothered him, just a dead ache like a neuralgia headache, that the headache was present principally all the time that appellee did not take something to lull the misery, meaning the little white tablets, that these tablets killed the pain or stopped it, that sometimes the misery lulls when it was real fair and not cloudy and cold, and that every now and then he was not bothered with this complaint as bad; that the headaches ran from over the left eye up over his head but not into the neck; that he was bothered in the low part of his back, right in the center and kind of down on each one of the hips, running right down his legs, down in the calf, the leg muscles feeling kind of dead or like they were drawing; when he went to stoop over, he could hardly do so and it seemed to draw him to stoop over and hurt also, being unable to step up on something very high, these places hurting him practically all the time; that the tablets stopped the pain, lulled the misery and appellee felt just as good as anybody after taking them but that did not allow him to do work and the tablets do not give him any strength in his back.

As to his ability to work, appellee testified to the effect that he was given a physical examination when he went to work for this employer and he was hired and able to carry on his job as a laboring man; that now he could not do work in the woods or hooking tongs or climbing up on cars, that

he does not feel that he will be able to do the work that Southern Pine hired him to do; he has been unable to work since July 11, 1956, and has done no work since then, and he could not do a day's work on his usual job.

Dr. Allamon, appellee's medical witness, saw appellee only twice, August 16 and September 5, 1956, and testified on direct examination to the effect that examination of appellee on August 16th revealed a one inch healed scar in the left eyebrow; three upper and two lower teeth, none of which met; pain and spasm on forward bending of the low back at about 45 degrees, both lumbar paravertebral areas were tender, straight leg raising caused low back pain at about 60 degrees, no evidence of nerve root pressure; that from X-rays made for this doctor the disc space in the lumbo-sacral joint was narrower, arthritic changes were denoted in the sacro-iliac joint with lipping or arthritis of the whole lumbar spine; that the arthritis was not a result of this injury, appellee already had arthritis of the back, such a back is more susceptible to injury, heals more slowly than a normal back; arthritis is so common as to be almost normal in old age, the same lick or injury would be of longer duration than in a younger person; that appellee's complaints, in the doctor's opinion, were caused by an injury to appellee's back; in the doctor's opinion he would not approve appellee doing the type of work involving lifting heavy pulpwood or logs or climbing up or down log decks and that appellee could not work eight or ten hours a day, day in and day out, the way he had been accustomed to doing; that it is doubtful if appellee will ever be able to do that type of work; in treating this kind of condition there was no cure but sedatives and physiotherapy alleviated and relieved the pain but the doctor would not expect the back to be cured enough to permit resuming working picking up logs.

■■ Appellant argues that there is no testimony in the record that any disability of the appellee, resulting from the injury would extend 300 weeks from the date of the injury, or 270 weeks from the date of the trial, and further argues that if we allow such a verdict and judgment to stand, then we will be giving controlling effect to the bare conclusion of the appellee, a nonexpert, and the equivocal opinion of appellee's sole medical witness that it was doubtful if appellee could do his customary work. We cannot agree with this contention. The question of duration of the incapacity of an injured person can never be answered precisely. The injured party's own statements about how he got hurt, where he hurts at the time he was testifying and what he is able to do and what he is unable to do, can serve only as aid to the jury in making some reasonable, fair estimate of the term of disability. The opinions of medical experts have been held not to be controlling and can also be only a matter of aid to the jury in making their reasonable estimate of the term of disability.

■■ The appellant introduced the testimony of two medical experts who disagreed with the medical witness offered by the appellee, but again we find the same rule applying, that is, the opinion of an expert is nothing more than opinion evidence and is not binding upon the court or the jury, except in certain situations where matters of scientific fact can be proved only by experts with scientific knowledge. We believe that the testimony of the appellee himself and that of his medical witness, Dr. Allamon, was sufficient to support the findings of the jury as to the extent and duration of his disability. See Coxson v. Atlantic Life Ins. Co., 142 Tex. 544, 179 S.W. 2d 943; Texas Employers' Ins. Ass'n v. Rigsby, Tex.Civ.App., 273 S.W.2d 681; American Motorists Ins. Co. v. Black, Tex. Civ.App., 253 S.W.2d 678.

By its fourth and fifth points the appellant complains of the following argument by counsel for appellee in his argument to the jury:

"Now, we ask you to consider all this evidence that has gone before you; con-

sider it as only the jury can; not with an interest in the case, not receiving any financial benefits from it, not receiving a penny for it. The lawyers receive fees * * * it all may tend to make us a little bit prejudice; we try ouside of the case." ·

"Now, if you think from the evidence—now from the testimony—that it is not permanent, then you decide on 400 weeks, 300 weeks, 200 weeks, or no weeks. I am going to assure you that the firm of Fisher, Reavley & Barber will not have any quarrel with you, I respect your judgment. If I didn't I wouldn't bring a case up here to you."

No objection was made to the trial court when either of the above statements were made in the argument, but their complaints were made in motion for new trial.

■ We find nothing in the reference in the argument to the effect that attorneys receive fees which would be so harmful and prejudicial to the rights of the appellant that an objection and instruction by the trial court to the jury to disregard it would not have cured it.

■ The matter complained of in the fifth point had reference to the fact that the firm of Fisher, Reavley & Barber were attorneys for the appellee and as such would not quarrel with the jury over its verdict. Appellant says that this was a reminder to the jury that the Honorable Joe Fisher, the District Judge of Jasper County, was on their side; that he had formerly served that district as District Attorney and had become District Judge the first of the year of trial. It contends that this was an argument which served to emphasize to the jury that their present District Judge had previously represented appellee in his claim, and that he must have believed his claim for total and permanent disability.. The argument itself seems to point in the other direction, as it announces to the jury that appellee's lawyer would be satisfied with the verdict whether it made a finding of disability of 400, 300, 200 weeks or no weeks. At any rate, we regard such men-

tion of the name of the District Judge in this manner as not being so vicious or harmful as to cause us to assume that it resulted in rendition of an improper verdict.

Since no objection was made to either argument, we believe no reversible error is shown by these points. Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054; Wade v. Texas Employers' Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197; Lumbermen's Lloyds v. Loper, 153 Tex. 404, 269 S.W.2d 367.

The appellant's sixth point is that the trial court erred in overruling its amended motion for new trial, because the verdict upon which judgment was entered was not the verdict of the jury but was reported as the verdict as a result of a clerical mistake. At the hearing on appellant's amended motion for new trial, one of the jurors who sat in the case testified by deposition as to how the jury's answer to Special Issue No. 3 was returned. According to his testimony the jury first undertook to answer Special Issue No. 3 and some wanted to answer 400 weeks, one wanted to answer 200 weeks and no agreement was reached before going to lunch. After the jury went to lunch they were still unable to agree and the juror recommended an answer of 200 weeks and he told the other jurors 200 weeks was his limit. After some discussion a vote was taken and the juror thought he was voting on 200 weeks and all the jurors agreed. When the verdict was read in court the juror learned for the first time that the jury foreman had put 300 weeks as an answer. He did not complain at that time because he thought the matter had already gone too far and could not be changed. The appellee developed on cross examination that since the trial the witness-juror had received an injury while working for his employer and was being paid compensation by the appellant.

■■ This was the only juror who testified that such answer was a clerical mistake. It is not permissible to impeach the verdict of a jury which has been thus rendered into court as their verdict by all the

jurors. The testimony of this one juror presented a fact question for the trial court to decide. If the evidence before the trial court had been clear and conclusive that a clerical error had been made the court, within its discretion, could have granted some relief. Here we think the evidence was far from conclusive and the trial court did not abuse its discretion in overruling appellant's motion for new trial based on the contention raised by this point. See Turner v. Big Lake Oil Co., Tex.Civ.App., 62 S.W.2d 491; Commercial Standard Ins. Co. v. Moore, 144 Tex. 371, 190 S.W.2d 811; Caylat v. Houston E. & W. T. Ry. Co., 113 Tex. 131, 252 S.W. 478. This point presents no error and it is overruled.

The judgment of the trial court is affirmed.