**Louie H. JONES, Appellant,**

v.

**TEXAS EMPLOYERS INS. ASS'N, Appellee.**

No. 15936.

Court of Civil Appeals of Texas.

Dallas.

Dec. 1, 1961.

Rehearing Denied Dec. 29, 1961.

Mullinax, Wells, Morris & Mauzy and Lonnie C. McGuire, Jr., Dallas, for appellant.

Leachman, Gardere, Akin & Porter, and Edward E. Crowell, Jr., Dallas, for appellee.

WILLIAMS, Justice.

Louie H. Jones sued Texas Employers Insurance Association seeking workmen's compensation benefits. He first alleged that he had sustained total and permanent disability as a result of an injury sustained by him on July 13, 1958 but, by trial amendment, he reduced his demands to 32 weeks temporary total disability following by permanent partial disability. In a jury trial the principal controversy was the extent of plaintiff's disability. In answer to special issues the jury found that plaintiff was temporarily and totally disabled for a period of 32 weeks following his injury and, in answer to special issue No. 6, found that at the end of the 32 week period plaintiff would not have any partial incapacity. Judgment was rendered for plaintiff for 32 weeks compensation only. Plaintiff appeals contending (a) that the trial court erred in admitting certain moving pictures in evidence; (b) that the jury's answer to special issue No. 6 was so against the great weight and preponderance of the evidence as to be clearly wrong; and (c) that there was no evidence to support the jury's answer to special issue No. 6.

During the trial appellee placed on the witness stand a Mr. R. L. Bellflower, an investigator employed by appellee, who testified that he had investigated appellant Jones on three occasions prior to trial; that he was armed with a 16-millimeter movie camera with which he took pictures of Jones on January 8, 1960 and on March 18, 1960. Bellflower testified that he had previously used the particular camera; that he had experience with motion picture photography for more than 8 years; and he further testified concerning the operation of the camera having to do with its speed and other features. After preliminary qualifying testimony the following transpired:

"Q. I'll ask you to state whether or not the films that you have taken—do you have them with you—the films that you have taken and have with you, do

they accurately and truly and in a life-like way portray whatever they show as the activities of Mr. Louie Jones?

"Mr. Mullinax: We object to that as calling for an opinion and conclusion. The films of course would be the best evidence of what they show?

"The Court: I sustain your objection."

Thereupon two reels of film were produced by the witness, marked for identification, and offered in evidence. Counsel for appellant then objected as follows:

"Mr. Mullinax: And of course we will object to them at this time. We don't know what those films contain at all. We don't know the relevancy or anything else—I don't know how I can object to them until I see them?

"The Court: I overrule the objection.

"Mr. Mullinax: Well, then, may I say that I will reserve the right to renew an objection whenever I can see what these films are?

"The Court: You may

"Mr. Mullinax: Thank you, Your Honor."

The films were then projected upon a screen and during the showing thereof the witness Bellflower was questioned concerning various things shown by the pictures. At the conclusion of his testimony and the showing of the films the witness was subjected to a lengthy cross-examination and then asked by appellant's counsel to show the films again while appellant's wife was on the witness stand. During cross-examination Bellflower expressed some doubt as to the identity of appellant in one of the scenes shown by him. At no time or following the demonstration of the motion pictures to the jury was any further objection made by appellant's counsel, nor was any motion made to strike the pictures or any part thereof.

■ The gravamen of appellant's contention is that if he had been allowed a preview of the motion pictures that he would have objected to the relevancy thereof. He says that he would have objected because the films fail to distinguish the appellant from other employees and that they only show the appellant performing acts which he had previously testified he was able to perform. While we agree with appellant that the trial court should have, upon proper request, permitted him to view the pictures in advance of their being shown to the jury, yet we are of the opinion that such error, if any, was not one that amounted to such a denial of the rights of the appellant as was reasonably calculated to cause, and probably did cause a rendition of an improper judgment in this case. Rule 434, Texas Rules of Civil Procedure. Both appellant and appellee state that this is a case of first impression in Texas insofar as the question of motion pictures is concerned. Our research has failed to develop cases exactly like this one, but we see no distinction in motion picture films than any other type of physical evidence that is offered by a party.

■ It has long been the rule that, before admission, offered documents or tangible items should be submitted to the adverse party for inspection. 41–B Tex.Jur. § 112, p. 142. "The Procedure of Admitting and Excluding Evidence" by Charles T. McCormick, Vol. 31, Tex. Law Rev. p. 128. The obvious reason for this rule is to permit the opposing attorney to inspect the tangible thing which is proffered and give him an opportunity to make such objection thereto as he sees fit. However, as stated above we deem the error, if any, to be harmless. As shown above, appellant's attorney reserved the right to make objections to the films as it was shown. He filed no motion to withdraw the jury and present the films in the absence of the jury. During the showing of the films he made no objection thereto, either to the relevancy or to any other point. After the demonstration of the films no motion was made to have the court instruct the jury to disregard the films, or any part thereof. No motion for

mistrial was made based upon the demonstration of the film. Great latitude is allowed the trial court in determining the relevancy of testimony. The use of motion pictures, especially in damage suits and workmen's compensation cases, has become rather commonplace in our practice. Richardson v. Missouri K. & T. R. Co., Tex. Civ.App., 205 S.W.2d 819; and cases cited in 62 A.L.R.2d 686. Moreover, the motion pictures were obviously introduced for the purpose of demonstrating what the appellant could or could not do, all on the issue of disability. The activity shown in the pictures, as well as the identity of the parties shown in the pictures, go to the weight to be given the testimony, rather than to the admissibility thereof. There being no reversible error demonstrated, appellant's first point is overruled.

■ In considering appellant's points two and three being "insufficient evidence" and "no evidence" points, we are guided by the rules set forth by Chief Justice Robert W. Calvert of our Supreme Court in his Article entitled "No Evidence" and "Insufficient Evidence" points of error, Tex. Law Rev. Vol. 38, pp. 361, 372, and also by the Supreme Court in In re King's Estate, 150 Tex. 622, 244 S.W.2d 660. With these rules in mind we have carefully considered the statement of facts consisting of 277 pages which presents the characteristic picture of conflicting evidence concerning the extent of disability so often found in cases of this kind. From an examination of this testimony, considered as a whole, we find ample evidence of probative force to justify the submission of special issue No. 6. Furthermore, from this testimony we are not able to agree with appellant that the answer of the jury to special issue No. 6 is so contrary to the great weight and preponderance of the evidence as to be manifestly wrong. Following appellant's injury in July 1958 he went to see his own family doctor who referred him to Dr. Boswell, an orthopedic specialist, who treated him for several weeks. Appellant returned to work doing light work on the 1st of September 1958 where he continued such employment until February 1959, at which time he was given his old job back. Dr. Boswell testified that he discharged appellant on August 25, 1958 at which time he thought that appellant could return to any type work "he desired to do". Dr. Boswell next saw appellant on February 17, 1959, at which time appellant gave a history of a lifting, twisting injury. Appellant was hospitalized and in March 1959 he was released by Dr. Boswell to return to duty. It was Dr. Boswell's opinion that when he was released in March 1959 that there was no disability to prevent appellant from returning to full duty and that there was no permanent restriction on his ability to do ordinary tasks. Dr. Boswell examined appellant again in August 1959 and as a result of such examination he found nothing to change his conclusions from that of March 1959. Appellant testified that he purchased an interest in a filling station in May 1959 and operated this service station until December 1959. Losing money on this venture he then went to work for an oil company, operating a service station, and worked until about March 1960. For a few days he worked with another service station and then went to work for a construction company as a truck driver. After a short period he then went to work for Hermetic Seal Transformer Company for which company he was working at the time of the trial. Appellant's medical testimony consisted of that of Dr. Ruth Jackson who first examined appellant on January 14, 1960, some 18 months after appellant's injury. She testified that in her opinion the appellant was disabled.

Obviously the testimony of Dr. Boswell, alone, was sufficient to justify the court in submitting special issue No. 6 and therefore appellant's point of "no evidence" is overruled. Concerning the "insufficient evidence" point it is quite obvious from this record that the evidence is conflicting, as is usual in cases of this kind, we are not able to say that the jury's finding to the effect that there was no partial disability following

**322**

the undisputed 32 week period of temporary total disability, was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. It is elementary that the extent and duration of disability in a workmen's compensation case is a matter for the jury's determination. Texas Employers Ins. Ass'n v. Scott, Tex.Civ.App., 233 S.W.2d 171; Muro v. Houston Fire & Casualty Ins. Co., Tex.Civ.App., 329 S.W.2d 326. The mere fact that the jury chose to accept Dr. Boswell's testimony as opposed to that of Dr. Jackson, and the lay testimony, is not sufficient grounds for us to hold that the verdict must be overturned. Opinions of medical witnesses in compensation cases, as in other cases, are not controlling, so that it should not be said on appeal that the jury's finding of facts contrary to those testified to by an expert does not and should not constitute a finding against the great weight and preponderance of the evidence. Angelina Casualty Co. v. Spencer, Tex.Civ.App., 310 S.W.2d 682.

A recent case involving a similar question is that of Guerra v. Texas Employers' Ins. Ass'n., Tex.Civ.App., 343 S.W.2d 306, in which there was conflicting medical testimony regarding the extent of appellant's injury. The San Antonio Court of Civil Appeals pointed out that it was the jury's function to resolve conflicts in the testimony concerning the extent of disability and such resolution of the conflict by the jury was not clearly against the overwhelming weight and preponderance of the evidence.

Appellant lays great stress on the fact that the evidence demonstrates that appellant was making less money on the job he had held for some five months before the time of this trial. This, at the most, would only be evidentiary. The question is not what appellant was actually being paid, but rather whether there was any decrease in his ability to earn. The jury was certainly entitled to reject some of the testimony, or to draw reasonable inferences from the total body of the testimony, and to conclude that appellant's ability was not impaired even though he was actually

making a lower remuneration. Consolidated Casualty Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706.

An overall consideration of this record reveals ample evidence of probative force not only to justify the submission of special issue No. 6 but to justify the answer of the jury thereto. Having heard the evidence, observed the demeanor of the witnesses, and having carefully weighed the facts and circumstances before it, the jury made its decision, and such decision cannot be said to be contrary to the law.

Judgment of the trial court is affirmed.