**L. D. HAWKINS, Appellant,**

v.

**TEXAS EMPLOYERS' INSURANCE ASSO- CIATION, Appellee.**

**No. 7197.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 26, 1962.

Rehearing Denied Jan. 7, 1963.

Herrick & McEntire, Fort Worth, for appellant.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, for appellee.

CHAPMAN, Justice.

This is an appeal by claimant below, L. D. Hawkins, from a judgment for Texas Employers' Insurance Association based upon a jury verdict.

All emphases shown herein are ours.

Appellant went to trial upon pleadings alleging total and permanent incapacity as a result of an alleged ruptured interverte-

bral disc in the lumbar area of the back while in the course of his employment in Hutchinson County by M. W. Kellogg Company.

In response to the special issues submitted, the jury found appellant suffered total incapacity beginning upon the day of the injury, October 4, 1960; that such total incapacity was temporary rather than permanent; that its duration was one week; that he also suffered a permanent partial incapacity beginning on October 11, 1960; that an average weekly wage as of the date of injury fair and just to both plaintiff and defendant was $154; that plaintiff's average weekly wage earning capacity during the period of partial incapacity was $156; and that payment of compensation in weekly installments, instead of a lump sum, would result in manifest hardship and injustice.

The trial court instructed the jury on "total incapacity" as follows:

"The term TOTAL INCAPACITY does not imply one's absolute inability to perform any kind of labor, but means that one must be so incapacitated that he becomes disqualified for performing the usual tasks of a workman to such an extent that he cannot procure and retain employment. You are further instructed that the term TOTAL INCAPACITY does not imply that one has such incapacity merely in the event that, after an injury, he is unable to do the same or as much and hard work as he did before the injury, but if one has sufficient capacity for physical work in any employment suited to his experience and condition so that he is fit to find and retain work therein with reasonable regularity and duration, then such person is not regarded as totally incapacitated."

█ It will be noted that the first sentence of the definition is in substantially the same language that was approved by the Supreme Court in this state in a workman's compensation case as far back as 1933.[1] The definition in the first sentence of the quoted definition has been approved many times since as a proper definition for the term "total incapacity" in a workman's compensation case.[2] In the Mallard case cited in footnote 2 the Supreme Court held that the term "implies disability to perform the usual tasks of a workman and not merely the usual tasks of any particular one trade or occupation." Unquestionably, the trial court would have been correct had he stopped with the first sentence of the definition given, and both plaintiff and defendant would have been fully protected under the definition.

█ Though this court has held the definition here given did not constitute reversible error under the objection that it restricted the jury to a consideration of the same type of employment as that in which claimant was working at the time of injury,[3] neither this court nor any other court of this state, so far as we have been able to determine, has ever approved the definition given here as a proper definition. Under the facts of this case we particularly believe it constituted a comment by the court upon the weight of the evidence, as we shall proceed to demonstrate.

The testimony of appellant shows that at one time he worked for a short period of time in a grocery store, a cafe, and a barbeque place. All of these require physical work. Under the rambling second sentence of the definition given the jury had a perfect right to speculate upon the different types of physical work appellant had engaged in during his life and to conclude if he could find and retain employment in any

1. Texas Employers' Ins. Ass'n v. Ray et al., Tex.Civ.App., 68 S.W.2d 290 (writ refused).

2. Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000 (Sup.Ct.),

cases cited therein and cases cited under Shepards Southwestern Reporter Citations under syl. 1 of the Mallard case.

3. Texas Employers' Ins. Ass'n v. Waters, Tex.Civ.App., 356 S.W.2d 209.

of them with reasonable regularity and duration he was not totally incapacitated. The court told the jury in effect that appellant was not totally incapacitated just because he was unable to do the same or as much hard work as he did before the injury if he had sufficient capacity to do physical work *"in any employment suited to his experience and condition,"* and it is not even plain in the definition what the word "condition" means. Under such definition if he could secure a job of polishing apples in a grocery store, cooking hamburgers in a cafe, or vending barbeque from a roadstand and could retain such job or jobs with reasonable regularity, he would not be totally incapacitated. We do not believe the workman's compensation law passed for the benefit of working men where their recovery is limited as it is by statute contemplated. that a boiler maker capable of drawing $3.90 an hour could not recover total and permanent disability if he could cook hamburgers, dish out barbeque, or polish apples after an injury that incapacitated him from doing the work to which he had been accustomed most of his working life and which had become his craft, even though he had spent some time working in a grocery store, a cafe, and a barbeque stand as part of his experiences in earning a livelihood. It is true he had been able to work in his own craft after his injury but only because of the benevolence of his employers or foremen who permitted him to polish rusty bolts and flag for draglines, work that did not require stooping, bending, lifting, climbing ladders, and working in close places, such as the testimony here shows is expected of a boiler maker.

We are convinced the second sentence of the definition under discussion was improper under the facts of this case and constituted reversible error, but in any event the case must be reversed for another reason.

In appellant's motion for new trial error is asserted because the verdict of the jury, taken as a whole, which had the effect of awarding only $35 compensation for the injury was so against the preponderance of the evidence as to be manifestly unjust.

█ From the record made it becomes the duty of this court to weigh and consider that which supports the verdict and that which does not, and to set aside the judgment and remand the case if after such consideration we conclude the verdict is so contrary to the overwhelming weight of all the evidence as to be manifestly unjust, regardless of whether there is some evidence to support it. Prewitt et al. v. Watson, Tex.Civ.App., 317 S.W.2d 954, approved, 159 Tex. 305, 320 S.W.2d 815; In re King's Estate, (King v. King et al.) 150 Tex. 622, 244 S.W.2d 660.

The testimony shows without contradiction that appellant in welding rings onto a twelve inch steel pipe, nine feet long, weighing approximately 540 pounds, was required to lift up one end and place it on a dolly and then go to the other end and lift it. He testified it was so heavy he would have to jerk on it to raise it. He had just started that particular task for the second day when injured. "So, as I got braced and went to jerk on it, that time the pain hit me in the back and my legs fell out from me * * *." When he realized he was hurt, he reported it to his superior, was sent to Dr. Barksdale at Borger and by him placed in traction. He testified after he got out of traction, he went to Fort Worth, "inquired to find out the best doctor I could find," asked his counsel to arrange for him to see Dr. James E. Holmes and went to him for examination first on October 20, 1960.

Dr. Holmes is a graduate of Tulane Medical School and did his residency in orthopedic surgery at Charity Hospital in New Orleans. He is a member of the orthopedic staff at Tulane Medical School, where he lectures to students several times a year, is on the staff of all the Fort Worth hospitals, a member of the American Academy of Orthopedic Surgeons, and certified by the American Board of Orthopedic Surgery.

Dr. Holmes testified by deposition that he found extensive muscle spasm present in the low back, tenderness on the left side of his back at the belt line, and some depression of the heel cord reflex on the left side. The straight-leg-raising test showed positive. Based on his numerous tests, X rays taken, and objective findings, he diagnosed nerve root depression probably from a ruptured disc.

Dr. Holmes again saw appellant on October 27, 1961. At that time he still had tenderness on the left side of his back and still had muscle spasm there. X rays taken at that time showed some changes since the first time and some settling or narrowing over the lumbo sacral interval not present in the first X rays, with a definite narrowing between L–5 and S–1. He stated appellant could not pass a physical examination for work requiring bending, stooping, lifting, ladder climbing, or getting into awkward positions. When asked if he had an opinion as to what his disability was in terms of being able to obtain or retain employment requiring the performance of the usual tasks of a working man, he answered that he was totally disabled.

Dr. Gerald King, a general practitioner of Fort Worth, examined Mr. Hawkins first on January 22, 1961. He testified the straight-leg-raising test was positive at 50° on the left, he had a retarded left knee jerk, the Lasague test was positive on the left and that all those were objective findings. He also found muscle guarding and retraction of the low back. He next examined him on October 27, 1961, before the deposition was taken, and found absence of Achilles tendon reflex and loss of almost all tactile sensation in the left leg. He diagnosed a ruptured disc at L5–S1 or L–5 L–4 level. He testified claimant was totally disabled from doing any labor involving stooping, lifting, climbing ladders, or getting in awkward positions and that the disability was permanent. He testified he would not pass him for physical work requiring such exercise.

Appellant testified he was forced to go back to work on December 14, 1960, so he could arrange for a place to sleep and eat. He was given a job of overseeing tube fitting at Grapevine and did not do any bending, stooping, or lifting because of stating his physical disabilities to his employer. He had from two to three men helping him on work he had not required any help to do before his injury. When the work at Grapevine was finished he went to work for Monicle & Powell Construction Company at Freeport, Texas. He also stated his physical condition to the foreman there, and he gave him a job of flagging on draglines that required the use of only his hands and fingers, and when that work was not available, the foreman let him clean bolts and nuts with a wire brush while sitting on a bench in a little house used for that purpose.

Mr. Toler, foreman for Monicle & Powell Construction Company, by deposition corroborated appellant's testimony of his work for that company. Though they paid him $3.90 per hour, Mr. Toler testified in effect that he did not do the usual tasks of a boiler maker. He said one of the things he noticed most about Mr. Hawkins was that he was unable to stoop or bend down and that he had seen him try to help someone lift a hundred pound weight and he would just have to back off because he could not help lift it. He testified in boiler making work they would try to help a brother union member who was injured.

Arnold Kirk also testified by deposition. He had worked with claimant in 1957 and 1958 on various jobs when he was able to do all the regular work required of his craft. When he worked with him on the Monicle & Powell job, he said Hawkins complained of hurting in his back and loss of sleep and that he was unable to do the usual tasks of a boiler maker.

The testimony also shows Dr. Holmes had claimant fitted for a back brace which was a corset sort of affair with eight steel staves and that he had worn it all the time

thereafter up to the date of trial except when driving in an automobile.

To counteract all the above testimony there is only the deposition of Dr. A. Ross Davis of Houston, an orthopedic surgeon with about the same background of training as Dr. Holmes. The only time Dr. Davis examined him was on January 21, 1961. He secured appellant's history of having been working regularly, made essentially the same tests as Dr. Holmes, and took X rays. He testified:

"A. This patient's X ray findings are compatible with his age and type of occupation. *He has been employed steadily over the last few months, and it has been three and a half months since he has seen a doctor.*

"These facts would tend to indicate that the person is not having as much difficulty as he stated he was having."

The doctor also said it was within reason that claimant had an acute lumbar strain but his opinion was that it had subsided in the interval of time that had elapsed. He said there was no substantiating evidence at the time he examined him of nerve root compression. He further testified in his deposition:

"Q. What conclusion did you reach as to whether, when you saw Mr. Hawkins in June of 1961, he was able to do physical work?

"A. I felt that *Mr. Hawkins was able to do physical work at that time.*"

Dr. Davis was not asked if claimant was able to do the type physical work of lifting heavy weights, bending, stooping, climbing ladders, and working in awkward positions as required of a boiler maker. He testified that he felt Mr. Hawkins was able to do physical work but he did not say what type of physical work. We think it is also significant that Dr. Davis took into account the fact that Mr. Hawkins had been working regularly and had not been to see a doctor in three and a half months.

 The testimony so preponderates against the verdict in this case that under the authorities cited above we are compelled to send the case back for another trial, at which time appellant should not have to be burdened with the definition of "total incapacity" with which the jury was instructed as a guide in the case heretofore tried but have the benefit of an approved definition of "Total Incapacity." Accordingly, the judgment of the trial court is reversed and remanded for another trial.