The TRAVELERS INSURANCE COMPANY, Appellant,

v.

O. L. WADE, Appellee.

No. 16240.

Court of Civil Appeals of Texas.

Dallas.

Sept. 27, 1963.

Rehearing Denied Dec. 6, 1963.

Thompson, Knight, Wright & Simmons, and David S. Kidder, Dallas, for appellant.

Mullinax, Wells, Morris & Mauzy and Lonnie C. McGuire, Jr., Dallas, for appellee.

DIXON, Chief Justice.

The Travelers Insurance Company has appealed from a judgment in a workmen's compensation case awarding appellee payments for permanent total disability.

Appellant. presents three points on appeal, but the substance of each of them is that "the verdict of the jury for total and permanent disability was so against the overwhelming preponderance of the evidence as to indicate bias and prejudice."

Appellee in two points says that appellant's points are too general to be entitled to our consideration and cannot be sustained because they make no attack on the jury's answer to any specific special issue. In support of this view appellee cites us to the recent opinion of our Supreme Court in Texas Employers Insurance Ass'n v. Hawkins, Tex., 369 S.W.2d 305.

In the above case the Supreme Court held that the Court of Civil Appeals, 363 S.W.2d 788 erred in reversing the trial court's judgment on the ground that "[T]he verdict of the jury *taken as a whole* is so against the great weight and preponderance of the evidence." (Emphasis ours). The Supreme Court said that the above assignment is too general, and that in the proper exercise of its jurisdiction the Court of Civil Appeals must determine which one of the jury's answers was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust.

�indeed The above pronouncement by our Supreme Court is not applicable to the situation presented to us in the instant case. Here appellant admits ·that appellee suffered total disability temporarily. Appellant attacks only the finding that appellee's total disability is permanent. This narrows our inquiry to one issue, Special Issue No. 5, where the jury by its answer found that appellee's total disability is permanent. We overrule appellee's two points wherein appellee asserts that appellant's three points on appeal are too general to be entitled to our consideration.

Appellee presented the testimony of five lay witnesses, including himself, which testimony was favorable to his claim of permanent total disability. He offered no medical testimony. Appellant offered two medical witnesses and one lay witness, an investigator who had taken motion pictures of appellee while appellee was engaged in certain activities. The medical testimony and, in part, the motion pictures were unfavorable to appellee's claim. We shall not attempt a detailed statement of the evidence. But the nature of appellant's points requires that we at least present a short summary of the evidence.

## EVIDENCE FOR APPELLEE

Appellee Wade testified that he had been employed by F. M. Woodward Company as an operator of heavy equipment such as bulldozers, scrapers and front end loaders. On October 9, 1961 he picked up a rock weighing between thirty and forty pounds which had fallen from a truck and in tossing the rock back onto the truck he injured his back, suffering great pain.

That evening and on numerous occasions thereafter for two months he was treated by his family physician Dr. Harvey Swords, an osteopath. Dr. Swords gave him medication and manipulative treatments which eased his pain and brought about some improvement in his back condition. Becoming dissatisfied because he had ceased to show further improvement, appellee at his employer's suggestion went to see Dr. W. M. Branch, an orthopedic surgeon, who treated him until about the middle of December. Appellee had not worked since his injury. He testified that under Dr. Branch his condition became worse.

He returned to work December 21, 1961 but found that he could not continue to operate the heavy equipment because the vibration and the pull necessary to operate heavy levers caused pain in his back. He

quit his job with Woodward in the middle of January 1962. He had been employed by Woodward for about twelve years.

After leaving the employ of Woodward appellee went into business for himself, opening an auto parts shop. He soon moved this business to his home. The shop showed gross profits from February through September 1962 averaging $117.20 per month.

Meantime appellee continued to suffer pain in his back, hips and legs. At times he could bend over fairly well but could hardly straighten up. Usually instead of bending over he would squat, keeping his back straight with very little bend. In this way he could get up and down easier. He was unable to lift objects weighing over twenty pounds. Following treatments his pain would diminish. But thereafter if he walked as far as a block the pain would return and his back condition would worsen. He had formerly played "catch" with his son, a Little League baseball player. But he was no longer able to play "catch", or throw a football in playing with his son. Sometimes he suffered dizzy spells.

Twice appellee's applications for employment were rejected, once for employment with a machinery company and once for employment as a night watchman. Except for his parts business appellee has not worked since leaving F. H. Woodward Company. At the time of the trial he was still suffering pain.

Appellee's wife testified that on the date of the injury appellee came home bent over and in pain. He had trouble getting his breath. Often he was unable to sleep at night. He was in bed most of the month of October. He showed some improvement in November and December, but when he went back to work in December she couldn't tell that he was any better. Sometimes he limps. Sometimes when he bends over he has to lean on something to help him straighten up.

Roy Daniels, his landlord, for a short time after appellee opened his parts shop, saw appellee every day. Daniels owns a ready-to-wear shop where Mrs. Wade works. Appellee's parts shop was at first located next door to the ready-to-wear shop. Appellee complained of pain, couldn't lift things and couldn't take care of his business properly. Daniels had been a friend of appellee's for seven or eight years.

M. H. Sanders, Ford Motor Company employee and long time friend of appellee, testified that he had seen appellee fifteen or twenty times since October 10, 1961. Appellee complained of pain in his back and legs and could not get to a standing position or walk around to do any good. When Sanders would visit appellee at the latter's parts shop, he would have to help appellee with his work. Appellee for some years had done automobile repair work during his off-duty hours. About a month prior to the trial Sanders went to see appellee to get him to do some repair work on Sanders' car. Appellee hobbled to the door and told Sanders he was in such pain that he could not do the repair work.

Mrs. Gertrude Rouse, appellee's sister, visited him several times after his injury. Appellee complained of pain in his back and legs. He was unable to rise from a sitting position without bracing himself on a table.

## EVIDENCE FOR APPELLANT

Dr. Swords, appellee's family physician was offered as a witness by appellant. The Doctor's records were subpoenaed and the Doctor himself appeared under threat of a subpoena. He had treated appellee for a general backache on numerous occasions prior to the injury of October 9, 1961. From April 24, 1954 until May 15, 1961 the Doctor's records show that he had treated appellee for general backache twenty-seven times.

When appellee reported the evening of October 9, 1961 it was too late to take X-ray pictures of his back. However X-ray pictures were taken the next day. They show-

ed no injury, ancient or recent. Appellee continued to complain of pain. The Doctor treated him every day for some time giving him medication and heat and manipulative treatments. Appellee gradually became better, but was still complaining of pain when the Doctor last saw him.

Dr. Swords' diagnosis: pain due to muscle strain, spasms and lesions in eleventh dorsal area. Dr. Swords did not anticipate any permanent disability. The doctor wrote a letter to appellee's attorney explaining his diagnosis and his treatments in detail. This letter was introduced into evidence. Also introduced into evidence was a written statement made by appellee to the Industrial Accident Board in which appellee stated that he wished the Board to consider Dr. Swords' opinion in making the award.

Dr. W. M. Branch, orthopedic surgeon, testified that appellee first came to him November 21, 1961 complaining of pain in his back, hip and legs. X-rays were taken and showed no abnormality. Nerve sensations were normal. There were no muscle spasms and no muscle atrophy. Nevertheless because appellee continued to complain of pain the doctor gave him the benefit of doubt and diagnosed his trouble as mid-back pain and sprain of minimal degree.

Dr. Branch read from his case record of January 19, 1961 as follows: "Has quit job because he wasn't working enough and the patient stated the weather had a lot to do with it." According to the Doctor's record appellee also told him that good jobs had come up with the company and he didn't get any of them and according to the Doctor's records, that he was going into the parts business because in that type of business he could sit down any time he wanted to and when he sat down and relaxed a minute he felt fine.

Dr. Branch saw appellee the last time on October 15, 1962. X-rays were again taken. In the Doctor's opinion there had been no change in appellee's condition.

Vernon McNeely, employee of Allen Commercial Service, testified that he had taken motion pictures of appellee engaged in various activities around his home after his injury. Appellee was shown working under the hood of an automobile, stooping down to look under the rear end of the automobile and getting in and out of the automobile. He was also shown repairing a sidewalk. In getting in and out of the automobile appellee moved carefully. In bending over he usually squatted or partly squatted rather than making a full bend of his back.

## OPINION

In considering the evidence in this case we must bear in mind that the opinions of medical witnesses as to physical conditions are not controlling. In workmen's compensation cases testimony of lay witnesses as to physical condition based on their observation of a person will support a jury finding of permanent total disability. Jones v. Texas Employers Ins. Ass'n., Tex.Civ.App., 352 S.W.2d 318, 322; Guerra v. Texas Employers Ins. Ass'n., Tex.Civ.App., 343 S.W.2d 306; Angelina Casualty Co. v. Spencer, Tex.Civ.App., 310 S.W.2d 682 (Syl. 2); Commercial Standard Ins. Co. v. Villa, Tex.Civ.App., 313 S.W.2d 627; Insurance Company of Texas v. Anderson, Tex.Civ. App., 272 S.W.2d 772; Traders & General Insurance Co. v. Daniel, Tex.Civ.App., 131 S.W.2d 276; Texas Employers Ins. Ass'n. v. Hevolow, Tex.Civ.App., 136 S.W.2d 931; Oilmen's Reciprocal Ass'n. v. Harris, Tex. Civ.App., 293 S.W. 580.

It would serve no useful purpose if we were to say that had we been sitting as a jury in this case we might have made a different answer to Special Issue No. 5 than that actually made by the jury. 4 Tex. Jur. 503, 504. In order to reverse this judgment we must go much further: we must be convinced after considering all the evidence that the jury's answer is so contrary to the overwhelming weight of the evidence as to be manifestly unjust. We

find ourselves unable to make such a finding. The jury obviously believed the lay witnesses. That was the jury's prerogative. There is sufficient testimony to support the jury's answer to Special Issue No. 5.

Many cases can be cited pro and con on the question of the sufficiency of the evidence to sustain a jury's verdict. It would be difficult if not impossible to give a detailed explanation of the rule which would fit all cases. Each case must be determined separately according to the particular evidence presented.

Appellant cites among others the opinion in Texas Employers Ins. Ass'n. v. Vineyard, Tex.Civ.App., 316 S.W.2d 156. That case is not in point here. For a period of years following his injury up to the time of trial Vineyard continuously held good jobs and received promotions and increases in pay. No such circumstances are presented in this case.

The judgment of the trial court is affirmed.

## ON REHEARING

In its motion for rehearing appellant cites us to The Travelers Insurance Co. v. Linder, Tex.Civ.App., 368 S.W.2d 797, and earnestly argues that since no one testified that Wade's injuries were total and permanent we were in error in finding that the evidence was sufficient to uphold the jury's verdict. In the cited case as in the case now before us only the testimony of lay witnesses was offered in behalf of the plaintiff. In this case, however, there was testimony favorable to appellant presented by medical witnesses.

■ Appellee and his five lay witnesses, including appellee himself, are not open to criticism for their failure to testify that appellee's injury was total and permanent. The general rule is that such testimony from a lay witness is not admissible over objection. Federal Underwriters Exchange v. Simpson, Tex.Civ.App., 137 S.W.2d 132, 136; Maryland Casualty Co. v. Sledge, Tex.

Civ.App., 46 S.W.2d 442, 445; Tex. Employers' Ins. Ass'n v. Brock, 36 S.W.2d 704, 706 (Tex.Com.App.); Stowell v. Tex. Employers' Ins. Ass'n, Tex.Civ.App., 259 S.W. 311, 317. There are exceptions to the rule. For example, one who has lost an arm would certainly be permitted to testify that his injury was permanent. But no such situation is presented here.

■ Notwithstanding the general rule prohibiting a lay witness from expressing an opinion that injuries are total and permanent, it is well settled that the factual testimony of a claimant alone, or of other lay witnesses, will support a jury finding of total permanent disability. The jury may reasonably infer total and permanent disability from circumstantial evidence. And this is true though the lay evidence may be contradicted by the testimony of medical experts. Travelers Inc. Co. v. Helstrom, Tex. Civ.App., 351 S.W.2d 321, err. ref. n. r. e.; Consolidated Casualty Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706, err. ref. n. r. e.; The Ins. Co. of Texas v. Anderson, Tex.Civ.App., 272 S.W.2d 772, err. ref. n. r. e.; Western Casualty & Surety Co. v. Mueller, Tex.Civ.App., 169 S.W.2d 223, err. ref. w. o. m.; American Motorists Ins. Co. v. Black, Tex.Civ.App., 253 S.W. 678, no wr. hist.; Lumbermen's Mutual Casualty Co. v. Zinn, Tex.Civ.App., 220 S.W.2d 906 err. ref.; Lott v. American Surety Co. of N. Y., Tex.Civ.App., 140 S.W. 2d 928, no wr. hist. It is to be remembered that the Workmen's Compensation Act is to be liberally construed in favor of the claimant. Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73.

■ The determination of whether the evidence is so contrary to the overwhelming weight of the evidence as to be manifestly unjust is a fact finding function of the Court of Civil Appeals. But that fact finding function does not extend so far as to permit a Court of Civil Appeals to substitute its findings for those of the trial court simply because the appellate court might have made a different finding if it had been

the original trier of the facts. Consolidated Casualty Ins. Co. v. Baker, Tex.Civ.App., 297 S.W.2d 706, 715; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

After a careful consideration of appellant's motion for rehearing we are convinced that our original decision in this case was correct.

Appellee has also filed a motion for rehearing. We see no merit in his motion.

The motions of appellant and appellee are both overruled.