**FIDELITY & CASUALTY COMPANY OF NEW YORK, Appellant,**

v.

**Vernon C. MOORE, Appellee.**

No. 16120.

Court of Civil Appeals of Texas.

Fort Worth.

April 1, 1960.

Bullington, Humphrey, Humphrey & Fillmore and Roy Schaeffer, Wichita Falls, for appellant.

Kouri & Banner and Jack G. Banner, Wichita Falls, for appellee.

RENFRO, Justice.

This is a Workmen's Compensation case. Trial was to a jury, which found that plaintiff was totally and permanently disabled for work as a result of the accident and that plaintiff was entitled to a lump sum payment to prevent hardship.

█ Defendant's first point of error contends the great weight and preponderance of the evidence is so against the finding of 400 weeks of maximum compensation as to render the judgment manifestly unjust.

Plaintiff injured his back while riding a mechanical fork lifting machine which was suddenly accelerated.

He had sustained several prior injuries to his back but testified that they were all of minor and temporary character and that after each such injury he was able to resume his regular work. He testified that the injury upon which the current claim was founded was in an entirely different area. He testified: "I can tell you when I was hurt this last time it was different from what the others was. It was just like you took an ice pick, jabbed me right in the center of the back, and the other, all of the other times, felt like something pulled in that muscle, but this time it was exactly— I couldn't no more describe it but one way—it would be just like you took a red hot ice pick and jabbed me in the center of the back"; that the injury was received on the 16th of December, 1958, that "It hurt right in the center of that back all time. I suffered awful with that back, I'm telling you I did." He continued to work until January 7 but his back was hurting "something fierce", he could not stand it, that it hurt so bad he had to quit on the 7th and had not been able to work since. He stayed in bed three weeks before he could get up and move; that he lost three joints in an operation performed by an

orthopedic surgeon; he was in the hospital eleven days following the operation. He was placed in a cast that went to both knees, and wore the cast eight weeks and one day. The operation was performed on the 16th of June; the cast remained on until August 21. As of the time of the trial, September 14, 1959, he testified he was not able to walk around at a normal gait and he could not bend his back, that his back ached all the time; that in the area where the "cutting" was done he had a dead feeling and that one dead feeling spot went from his knee to the calf of his leg. He still used crutches. He testified definitely he could not do the work he was doing before he was injured; he could not stand on concrete; the work he was accustomed to doing required agility and ability to lift and move and he thought he would never be able to do what he had done. To the question whether he would ever be able to return to work that required heavy lifting, he answered: "Absolutely not; absolutely not."

Plaintiff's wife testified plaintiff was barely able to get around, that his right leg gave him quite a lot of trouble, that he could not pick anything up and could not put on his socks. In her opinion plaintiff could not go back to the kind of work he had done in the past.

The witness Dr. Carrell, called by the defendant, testified that he diagnosed plaintiff's trouble as spondylolisthesis of the fifth lumbar vertebra, with chronic lumbosacral strain; his recommendation was that the patient have a lumbosacral fusion, an operative fusion or bone graft of the lumbosacral area, bridging the defect; that "the fusion actually is a bony bridge designed to join the area above the defect to the sacrum, so that stress or strain is relieved through the area of the defect." Surgery was performed on plaintiff on June 16. Plaintiff's progress was good and the post-operative course was quite uneventful while in the hospital. He had seen the plaintiff only one time since the operation, that was August 21, 1959. It was his opin-

ion that plaintiff would have approximately six months total disability following surgery but that he would not be able to do hard manual labor for nine to twelve months from the time of surgery; that there is a certain degree of permanent disability as a result of the loss of mobility or loss of motion in the area that was fused; there are certain occasions when the bone graft is not successful; in some instances "these bony areas never become revitalized." The witness had no information as to plaintiff's progress as of the time of trial. Witness could not state with any certainty the exact length of total disability the plaintiff would sustain; that no exact estimate or sure evaluation of the disability could be made for at least a year; that in instances where such surgery has been necessary he would advise avoidance of heavy lifting and excessive strain; that he would advise plaintiff to find some moderately light type of work to do, if possible.

Dr. Maxfield, called by defendant as a witness, testified to the previous back injuries sustained by plaintiff; that plaintiff should not go back to heavy work under six months or maybe a year following the operation; that it would be several months before it could be ascertained the amount of permanent disability to plaintiff.

■■ As seen from the foregoing summary the physicians were unable to fix the duration of total disability with certainty. From the very nature of the injury the duration cannot be fixed with precision. As said in Angelina Casualty Co. v. Spencer, Tex.Civ.App., 310 S.W.2d 682, 685: "The question of duration of the incapacity of an injured person can never be answered precisely. The injured party's own statements about how he got hurt, where he hurts at the time he was testifying and what he is able to do and what he is unable to do, can serve only as aid to the jury in making some reasonable, fair estimate of the term of disability. The opinions of medical experts have been held not to be controlling and can also be only a matter of aid to the jury in making their reasonable estimate of the term of disability." The jury heard the evidence of the accident, the continuing pain, the type of work formerly done by plaintiff, the improbability of his ever being able to do such heavy work in the future; that he is not trained to do any other type of work. See American General Insurance Co. v. Florez, Tex.Civ.App., 327 S.W.2d 643.

■ An appellate court will not disturb the findings of a jury on conflicting evidence where there is some evidence to support their verdict unless the verdict is so overwhelmingly against it as to shock the conscience or show clearly that the conclusion reached was wrong or was the result of some passion, prejudice or improper motive. Foley Bros. Dry Goods Co. v. Settegast, Tex.Civ.App., 133 S.W.2d 228; Howard v. Sears, Tex.Civ.App., 196 S.W. 2d 105. In the light of all the evidence in the 220 page statement of facts, practically all of which is devoted to plaintiff's injury and disability, we cannot say that a finding of total incapacity for 400 weeks is such as to shock the conscience or show conclusively that a wrong conclusion was reached.

Defendant complains in point 3 that the court erred in submitting an issue on total and permanent disability because there was no evidence to support said issue. In view of the conclusion reached above, we have necessarily found some evidence to support the issue. The point is overruled.

■ In points 2 and 4 defendant contends the court erred in submitting issue No. 8 inquiring as to total and permanent disability and in entering judgment for 400 weeks for the reason plaintiff waived total disability beyond 100 weeks by his pleading.

Defendant did not object to the submission of issue 8 on the ground it was not supported by the pleadings. Its only objection was that there was no evidence to warrant such submission. We have already held there was sufficient evidence.

Because of its failure to object to the testimony concerning permanent disability and its failure to object to the issue because not supported by the pleadings, we think defendant waived its right to object, on appeal, to defects in plaintiff's petition. Rule 67, Texas Rules of Civil Procedure; Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562; Barry v. Patterson, Tex.Civ.App., 225 S.W.2d 864.

 Nor do we think the court erred in entering judgment for 400 weeks. Plaintiff's petition limited recovery to 400 weeks.

Where a verdict partially represents damages in excess of those asked in the pleadings, such excess may be disregarded and judgment entered for as much as would be proper under the pleadings. Hartford Accident & Indemnity Co. v. Moore, Tex.Civ.App., 102 S.W.2d 441.

In its last point defendant contends the pleadings did not authorize the court to render a lump sum judgment. The defendant did not object to the submission of the lump sum issue to the jury on the ground it was not properly plead, and did not raise any objection to the lump sum provision of the judgment in its motion for new trial. The error of the court, if any, was waived. Rule 374.

Judgment affirmed.