DEALERS NATIONAL INSURANCE
COMPANY, Appellant,

v.

Johnnie JACKSON, Appellee.

No. 6539.

Court of Civil Appeals of Texas.
Beaumont.

Oct. 11, 1962.

Motion for Rehearing Nov. 7, 1962.

Rehearing Denied Nov. 28, 1962.

298

John H. Benckenstein, Beaumont, for appellant.

Sample & Walker, Carl Waldman, Beaumont, for appellee.

STEPHENSON, Justice.

This is an appeal from the judgment of the trial court awarding plaintiff total and permanent disability under the Workmen's Compensation Law. The parties will be designated here as they were in the trial court.

Defendant contends first that there was no evidence that plaintiff was an employee of the assured, W. B. Cariker, doing business as W. B. Cariker Lumber Company. For brevity, this assured will be hereinafter referred to as "Cariker". The employment situation is somewhat complicated, and it is necessary for us to make a complete statement in order to clarify this point.

Cariker was the owner of an electric mill, and was engaged in the manufacturing of lumber. As a part of the operation, the waste lumber was carried from the mill by means of an electric conveyor to the slab pit, where it was burned. Cariker made an oral agreement with R. R. Moore to let Moore use his electric power to operate Moore's saws. Moore would catch the waste lumber as it came by on the conveyor belt, and would cut this waste lumber into either handle stock or stacking strips. Moore had an arrangement with a third person to sell the handle stock at so much per thousand, and this was the only compensation Moore received for his work. The stacking strips were used by Cariker in his lumber business to separate the layers of lumber after the lumber had been cut and as it was being stacked. Mr. and Mrs. Moore separated and he left. Mrs. Moore made the same agreement with Cariker, as had been made by her husband. Mrs. Moore made an agreement with Clifford Baker to perform the services for her at the sawmill for which she agreed to pay Baker $14.00 per thousand stock handles. Mrs. Moore gave Baker permission to hire his stepfather-in-law, the plaintiff in this cause. Baker promised the plaintiff to pay him one-half of the money Baker received from Mrs. Moore. At the time of the accident, plaintiff was cutting stacking strips.

Considering the evidence most favorable to the finding of the jury that plaintiff was Cariker's employee, there is the following evidence: (1) at the time of the accident, plaintiff was engaged in the work of cutting stacking strips. (2) Cariker's

foreman told Baker to cut a few stacking strips every day, and not just one day a week. (3) Cariker's foreman "raised cain" with Baker and told him the stacking strips would have to be cut clean and not uneven. (4) Cariker's employees asked Baker to shut down his operation when the wind was blowing saw dust on the place Cariker's employees were stacking lumber. (5) Cariker's employees cut off the electricity two or three times. (6) Mrs. Moore's employees were compelled to clean up around their operation. (7) The accident occurred on Cariker's premises. (8) Baker was asked about Cariker's foreman and his supervision of the work—"He'd come over and look at them (stacking strips) would shake his head and turn around and walk off."

 Plaintiff contends part of his work was for Mrs. Moore as an employee of an independent contractor, and as to other parts of his work, he was Cariker's employee. Plaintiff cites the Supreme Court's decision, Standard Insurance Co. v. McKee, 146 Tex. 183, 205 S.W.2d 362. Plaintiff also quotes at great length from the Supreme Court case, Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94. This case lays down several rules of law we are bound to follow in this type of case:

"It is thus our duty to determine whether in respect to the particular act of the servant he was under the control and supervision of the general employer, or the borrowing employer."
" * * * [t]he fact that a person is a general servant of one employer does not, as a matter of law, prevent him from becoming the special servant of another who may become liable for his acts. He may become the other's servant as to some acts and not others."

" * * * the test is whether in the performance of the wrongful act he continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent."

In this case Hilgenberg was killed by the tractor rolling over him, while he was actually engaged in giving the driver of the tractor orders as to how to operate the tractor. Because of his right of control over the driver, demonstrated by the fact he was standing within six feet of the tractor pointing with his cane the way he wanted the tractor driven, Hilgenberg made the driver of the tractor his employee. We have no such facts in this case. No Cariker employee was directing or supervising the details of the operation of Mrs. Moore's mill. Mrs. Moore and Cariker entered into an agreement mutually beneficial to both. Mrs. Moore obtained stock handles which she could sell, and Cariker obtained stacking strips which he needed in the operation of his lumber mill. The facts in this case clearly bring it under the settled law of this state as restated in Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905:

"The courts of this State have repeatedly held that an employer has the right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms, in order to accomplish the results contemplated by the parties in making the contract, without thereby creating such contractor an employee of such company."

It is obvious that Cariker had to have certain rules such as the size and shape of the stacking strips, as well as the necessity of keeping enough on hand so the stacking of lumber would not be delayed. But the rules of operation did not change the status from an independent contractor to employee.

In Yarborough v. General Lloyds Fire & Casualty, Tex.Civ.App., 259 S.W.2d 644, it is stated:

"The fact that some control is exercised over an independent contractor to the extent necessary to secure the performance of a contract according to its terms does not make him an employee

or change his status from that of an independent contractor to that of an employee"

citing Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145.

The Judgment of the trial court is reversed and judgment is rendered that plaintiff take nothing.

## ON MOTION FOR REHEARING

■ On motion for rehearing, the majority of this Court concludes the evidence raised an issue on the question of employment for the jury to determine, which they did, favorably to the plaintiff. One of the important elements, suggesting employment, was the testimony of Baker, as follows:

Question: "Did they (Cariker) ever have anybody come over, other than this foreman, come or to help you all with anything there?"

Answer: "The only time he was interested was if I got behind on cutting the sticks why, he would come over and shut me down on the stickmill, and he would tell me he would put a man up there that would cut enough strips for him, in other words, I would have to go home."

The majority of the Court are of the opinion that this testimony indicates that Cariker had control of the machinery and that he could fire plaintiff; and this, with the other evidence in the case was of such nature that the issue was properly submitted to and resolved by the jury.

■ Appellant also contends the finding of the jury that plaintiff was Cariker's employee was against the great weight and preponderance of the evidence. After considering all of the evidence, both favorable to and contrary to the verdict, it is concluded by the majority that the verdict is not so against the weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

■ The majority have further concluded that the testimony of plaintiff, both on the stand and in his deposition, was consistent with plaintiff's theory of the case that he was Mrs. Moore's general employee, but Cariker's special employee at the time of cutting stacking strips; the statement made by plaintiff did not constitute such unexplained judicial admission of fact as to make him an employee solely of Mrs. Moore, and prevent his recovery herein. U. S. Fidelity and Guaranty Co. v. Carr, Tex.Civ.App., 242 S.W.2d 224.

■ In connection with the trial court's definition of "employee", the jury was instructed as follows:

"You are instructed that, for the purposes of the Workmen's Compensation Law, a worker may have the status of employee in relation to a part of the work being performed." Defendant objected to this portion of the charge for the reason it was too broad and general, a comment on the weight of the evidence, a general charge, and failed to place the burden of persuasion upon the proper party. It is concluded that this instruction was not erroneous, and in any event the effect could not have been harmful to the defendant.

■ A careful consideration of the record reveals the findings of the jury that plaintiff had worked in the employment in question for the same or another employer for substantially the whole of the year preceding the date of his injury, and that plaintiff's average weekly wage was $40.00 per week, and that plaintiff sustained total and permanent disability, were supported by the evidence.

The writer of this opinion is convinced that there was no evidence to sustain the finding of the jury that plaintiff was Cariker's employee, and that such finding is so against the weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. However, the writer is

in agreement with the disposal of the appellant's other points on this motion for rehearing.

The judgment of the trial court is affirmed.