## The TRAVELERS INSURANCE COMPANY, Appellant,

v.

## William F. ARNOLD, Appellee.

### No. 16326.

Court of Civil Appeals of Texas.

Dallas.

March 27, 1964.

Rehearing Withdrawn April 24, 1964.

Thompson, Knight, Wright & Simmons, Timothy E. Kelley, Frank Finn, Jr. and Norman R. Rogers, Dallas, for appellant.

Howard S. Smith, Sulphur Springs, and Woodrow H. Edwards, Gilmer, for appellee.

BATEMAN, Justice.

This case arises under the Texas Workmen's ·Compensation Law. William F. Arnold, claiming to have been an employee of Shamrock Van Lines, herein-after called Shamrock, made claim against the appellant as insurer of Shamrock under that law. The jury found that he was an employee and that he was totally and permanently incapacitated as a result of accidental injuries sustained by him in the course of his employment. The insurer, The Travelers Insurance Company, appeals and presents six points of error.

The first point is that the trial court erred in overruling appellant's motion for instructed verdict made when the appellee rested. Appellant waived its right to complain of this ruling by proceeding to introduce testimony in support of its defenses. The first point is therefore overruled. Robb v. Gilmore, ᵀex.Civ.App., 302 S.W.2d 739, err. ref. n. r. e.; 41–B Tex. Jur., TRIAL—CIVIL CASES, p. 213, § 184; McDonald's "Texas Civil Practice," § 11.26.

By its second and third points of error appellant asserts that there was no evidence, or at least insufficient evidence, to support the jury findings that appellee was an employee of Shamrock and in the course of that employment when injured. Appellant says the evidence shows that appellee was an employee of one P. J. Fleming, an independent contractor. A determination of this question necessitates a statement.

By a written Truck Lease Agreement dated June 21, 1961, Fleming leased his 1956 truck-tractor to Shamrock to be used for towing a furniture van trailer owned by Shamrock. The portions of this lease touching on this question are summarized as follows (all italics ours):

Fleming, as lessor of the equipment, agreed:

1. That the vehicle would be used exclusively for transporting household goods *"under the direction and control of Lessee."*

2. That Fleming would at his own cost and expense either drive the vehicle him-

self or provide necessary driver and assistants, paying their wages and all taxes measured thereby.

3. That he would at his own cost provide workmen's compensation insurance *"covering said employees while operating in the service of Lessee,"* or authorize Shamrock to obtain such insurance and reimburse Shamrock for the cost thereof.

4. To employ only experienced and qualified drivers and assistants *and furnish Shamrock with a completed and signed employment application on each such driver or assistant.*

5. To pay all expenses of the operation of the vehicle.

6. To paint and letter the leased vehicle *according to Shamrock's specifications,* and to remove such paint, etc. upon termination of the lease.

7. That any "service or transportation performed by Lessor which * * * is without *consent, authorization direction, and control of Lessee,* * * * will be deemed an unlawful operation and a breach of this agreement and *Lessee will assume no responsibility of liability for such act or acts by Lessor."*

8. To devote his services and the vehicle to the service of Shamrock exclusively in the transportation of goods, wares and merchandise, etc., *"and in connection therewith to comply with all rules and regulations and instructions of Lessee."*

9. To accept, in full payment of his services and for the use of the vehicle and "services of his employees and assistants," certain percentages of the revenues for the various services performed.

The contract speaks in numerous places of "Lessor and his employees" and "Lessor or his employees."

One W. J. Foley was lease agent for Shamrock and signed the said lease on its behalf. He knew appellee casually, as appellee had worked for others who had leased

trucks to Shamrock. Appellee had also done a small amount of work for Shamrock, helping unload trucks. Appellee received $17.25 in wages from Shamrock in 1961 (the year of the accident), although it was not shown whether any part thereof was earned during the alleged employment involved in this case. Appellee had asked Foley to help him obtain employment as a helper with an owner-operator. Foley sent word to him to "come over and go to work." Appellee reported to Foley at Shamrock's office, where he was put in touch with Fleming, whom he had not known previously. Fleming and appellee left on the day of the contract, or a day or two later.

Although Foley testified that appellee told him he was going to work for Fleming, appellee testified that he was employed by Foley, who gave him and Fleming the following instructions prior to their departure: to report to Washington, D. C.; to drive about forty-five miles an hour; to keep daily logs all the way; not to go over forty miles an hour in Virginia; not to sleep in the van or the tractor, or to smoke or drink on the job, and to treat the customers courteously. Appellee testified that in January 1961 Foley sent him to a Dr. Finch for his physical examination and paid for the same. Appellee testified positively that he was hired by Shamrock and was told that he would be paid by Shamrock; that he was not hired by Fleming. He was confronted with his signed statement made August 3, 1961 while still in the hospital in Maryland, in which he said that "the employment agreement was between Mr. Fleming and myself. He was to pay me $75 per week and I was to pay all of my own expenses," and that "On this trip Shamrock Van Lines, Inc. was not paying me any wages as I was employed by Mr. Fleming who was to pay me $75/week." He denied that he had made those statements to the investigator who wrote the statement, although at the end of the statement is the question, "Have you read the above report of 1 page and 14½ lines and is it correct?" Following this appellee wrote the word

"Yes" and signed the statement. Neither Foley nor any other officer or employee of Shamrock told either appellee or Fleming what route to take to get to Washington.

The van type trailer was owned by Shamrock and had its name painted on it. The tractor had painted on it "Leased to Shamrock Van Lines, MC ICC 115257."

Fleming and appellee paid their own food and motel bills. When they arrived in Washington they loaded the trailer with cargo destined for the West Coast and departed on June 29, 1961. About noon that day the accident occurred near Cumberland, Maryland and appellee sustained serious injuries.

Foley gave Fleming a pamphlet of the Interstate Commerce Commission containing the prescribed number of hours of service for a truck driver. Foley asked appellee to keep the log required by the Interstate Commerce Commission, since he had had previous experience keeping such records, and appellee testified that the log books were furnished by Shamrock and that he mailed to Shamrock a daily report as to his hours of work.

█ It is our view that the evidence was sufficient to warrant the jury in believing that Fleming was actually an employee of Shamrock, rather than an independent contractor. That being true, it would not matter whether appellee was employed by Fleming or by Shamrock, for it seems to be well settled that "when an agent, with the authority of his principal, express or implied, employs help for the benefit of his principal's business, the relation of employer and employe between such help and the principal is thereby created and the question of whether the assistant or helper is promised any remuneration is immaterial." Traders & General Ins. Co. v. May, Tex. Civ.App., 168 S.W.2d 267, 269, err. ref. w. o. m.

█ It is also now quite well settled in this state that if the employer "has the right of control in directing, not merely the end sought to be accomplished by the employment, but as well the means and details of its accomplishment; not only what shall be done, but how it shall be done," the relation of employer and employee is established. W. D. Haden Co. v. Ryman, Tex. Civ.App., 362 S.W.2d 133, 135, err. ref.

█ Application of that test to the facts of this case compels the conclusion that Shamrock had the ultimate right to control the details of Fleming's as well as appellee's work, from which it must follow that they were both employees of Shamrock. Traders & General Ins. Co. v. Frozen Food Express, 255 S.W.2d 378, err. ref. n. r. e.; Wardlow v. Newberry, Tex.Civ.App., 319 S.W.2d 437, no writ hist. Accordingly, the second and third points of error are overruled.

█ Appellant's fourth point of error asserts that there is no evidence, or in the alternative that there is insufficient evidence, to support the jury's finding that appellee's incapacity to labor is permanent.

The only evidence bearing on the quantum and duration of appellee's incapacity consisted of the report of the physical examination made January 25, 1961 by Dr. Finch showing no impairments or departures from good health and appellee's own testimony that before the accident of June 29, 1961 there was nothing wrong with him, but that after the accident and at the time of trial on April 15, 1963 it was difficult to hear and understand him because there was a limitation of his ability to open his mouth, the bones having been broken and "tied back there," that he remained in the hospital in Maryland about two months, that the whole roof of his mouth was torn out and his tongue cut in two, that he lost all but about eighteen of his teeth, that his cheek bone on the left side was crushed; that his left eye was so injured as to cause him to see two objects with that eye, which condition was still present at the time of the trial; that his right hip and pelvis bone

were broken, that the pelvis bone still "works up and down" as he walks; that the accident pulled a vertebra loose in his back; that his right leg above the ankle swells all the time and he can hardly walk on it, that this pains him all the time and his hip never does quit hurting; that while he was in the hospital he wore a girdle and was in a cradle for about three weeks and that when he left the hospital he was fitted with a steel girdle.

Arnold further testified that he had tried to work some since the accident; that prior to the accident he had made a living for years driving a van and performing manual labor; that he does not have very much education and does not know of anything he could get to do now to provide for himself and his family; that he cannot tell that he has "got any better at all," and that two or three months before the trial he voluntarily submitted to examination by a Dr. Warren at the request of appellant's attorneys. Dr. Warren did not testify. Arnold testified on cross examination that in 1962 he worked for Mr. L. F. Corrigan as a night watchman for about three weeks, that he stayed only three weeks because he had to walk too much and couldn't do the walking. He later said that he became ill with the flu for two or three weeks and then when he reported back for work he found his job had been filled by someone else; that he hasn't worked since then; that he tried to but couldn't. He tried to work at Admiral Van Lines and several other places but he could not do carrying; that he tried to work for several other transportation companies but couldn't work for them because he couldn't pass the physical examination. He was 59 years of age. Records of the Maryland hospital showed fractures of his maxilla and left tibia and separation of certain joints; that on admission Arnold stated that he had high blood pressure; also that a consulting doctor received the impression that Arnold suffered from heart disease. Neither side offered a medical witness.

This latter fact is of no great consequence because it is now well settled in Texas that total and permanent disability may be reasonably inferred from circumstantial evidence produced by lay witnesses, even though such evidence is contradicted by the testimony of medical experts. Travelers Ins. Co. v. Wade, Tex.Civ.App., 373 S.W.2d 881, 885, err. ref. n. r. e., and cases cited therein.

Any doubt we may have as to whether this evidence actually supports the jury finding of permanent incapacity must be resolved in favor of the right of the injured workman to receive compensation. Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315, 318; Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W. 2d 73.

The jury had the right to believe all of appellee's testimony and, observing what they could of his physical condition in the court room, to conclude that he was totally disabled and that such incapacity was permanent. Travelers Ins. Co. v. Wade, Tex. Civ.App., 373 S.W.2d 881, err. ref. n. r. e.; Travelers Ins. Co. v. Bearden, Tex.Civ. App., 373 S.W.2d 300, err. ref. n. r. e. Total incapacity does not mean an absolute incapacity to perform any kind of labor, but a person so physically disabled that he cannot perform the usual tasks of a workman in such manner as to be able to procure and retain employment, is in law considered totally incapacitated. Texas Employers Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S. W.2d 1000.

Not being convinced by a careful study of all the evidence that the jury's conclusion in this respect is so contrary to the overwhelming weight of the evidence as to be manifestly unjust, we overrule this fourth point of error.

 This brings us to appellant's fifth point of error, which asserts jury misconduct. Shortly after the jury took the case they sent a note to the court requesting a definition of the word "hire", which word

was used in the definition of the word "employee" in the court's charge. This request was refused by the court. The next day one juror called to the attention of the others definitions of the word "hire" and the term "contract of hire" he had obtained from Webster's Dictionary. The juror who testified to that stated that he changed his position on the special issue as to whether Arnold was an employee after the discussion but that he does not feel that this discussion of the dictionary term caused the change. There was no showing of what the dictionary definitions were. Moreover, there was nothing to indicate that the definitions were either wrong or that they had the slightest effect on any member of the jury.

Appellant cites S. Lightburne & Co. v. First Nat'l Bank of Rockport, (1921) Tex. Civ.App., 232 S.W. 343, no wr. hist., and Corpus Christi Street & Interurban Ry. Co. v. Kjellberg, (1916) Tex.Civ.App., 185 S. W. 430, no wr. hist. Those cases were decided prior to the adoption of Rule 327, Vernon's Texas Rules of Civil Procedure, which provides, *inter alia,* that such misconduct will authorize the trial court to grant a new trial "if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." This now places the burden on appellant to show that injury probably resulted from the misconduct. Davis v. Damge, Tex.Civ.App., 328 S.W.2d 203, err. ref. n. r. e. The trial court is no longer required to grant a new trial if it has only a reasonable doubt as to whether misconduct affected the verdict. City of Dallas v. Hutchins, Tex.Civ.App., 226 S.W.2d 155, writ. ref., n. r. e.; Lackey v. Moffett, Tex.Civ.App., 172 S.W.2d 715, no wr. hist.

Appellant also complains that the jurors speculated during their deliberations that

insurance rates for Shamrock had been increased following the accident in question and that, therefore, appellant felt that appellee actually was an employee of Shamrock. This inference was probably drawn by the jury, but there was testimony, admitted without objection, to the effect that the rates had already been increased. This, it seems to us, would justify the inference. That being true, there was no misconduct. However, if mistaken in so holding, we would in any event hold that the error was harmless. Rules 327 and 434, T.R.C.P.

Our careful study of all of the testimony offered at the hearing of appellant's motion for new trial fails to convince us that the misconduct proved probably caused injury to appellant. Therefore, under Rule 434, Vernon's Texas R.C.P. we overrule the fifth point of error.

■ Appellant's sixth point of error complains that the court improperly added to its definition of "employee" this sentence: "You are further instructed that, for purposes of the workmen's compensation law, a worker may have the status of employee in relation to a part of the work being performed." Appellant assails this as an improper extension of the customary and approved definition, that it is legally incorrect, is not applicable to this case, and is a comment on the weight of the evidence.

The Beaumont Court of Civil Appeals, in Dealers Nat'l Ins. Co. v. Jackson, 363 S.W. 2d 297, err. ref. n. r. e., had before it the identical question, and we adopt its language and disposition of the point, as follows: "It is concluded that this instruction was not erroneous, and in any event the effect could not have been harmful to the defendant."

Finding no reversible error in the record, the judgment appealed from is affirmed.

Affirmed.