**AETNA CASUALTY & SURETY COMPANY,**
Appellant,

v.

**H. D. BREWER, Appellee.**

**No. 7672.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 19, 1966.

Rehearing Denied Jan. 23, 1967.

Evans, Pharr, Trout & Jones, Lubbock, Charles B. Jones and Carlton B. Dodson, Lubbock, of counsel, for appellant.

Huff & Bowers, Lubbock, Forrest Bowers, Lubbock, of counsel, for appellee.

NORTHCUTT, Justice.

This is a workmen's compensation case. Plaintiff filed his original petition herein, appealing an award by the Industrial Accident Board, alleging, among other things, total and permanent disability under the Workmen's Compensation Act. The defendant filed its original answer. The case was tried before a jury. The court, in its charge, submitted to the jury thirteen special issues for answers thereon. The court, based on the jury's findings on the special issues, entered judgment for the plaintiff in the amount of $9,645.09. From that judgment the defendant perfected this appeal. Aetna Casualty & Surety Company will hereafter be referred to as appellant and H. D. Brewer as appellee.

Since the appellant's appeal is based solely upon the submission of Special Issues Nos. 7 and 9, we will not refer to the remaining issues. Those issues and answers thereto are as follows:

"SPECIAL ISSUE NO. 7

"What do you find from a preponderance of the evidence to be the duration of such total incapacity to labor, if any?

"Answer by giving the number of weeks, if any.

"ANSWER: 300 weeks"

"SPECIAL ISSUE NO. 9

"On what date, if any, do you find from a preponderance of the evidence that such partial incapacity, if any, began or will begin?

"Answer by giving the date, if any.

"ANSWER: June 24, 1970"

Appellant presents this appeal upon five points of error. As to Special Issue 7 it is contended by the first, third and fourth points that there was insufficient evidence and such findings were contrary to the overwhelming weight and preponderance of the evidence; there was no evidence to support the jury finding and that there was no evidence to support the finding that appellee sustained a total incapacity for a period of 300 weeks following his injury as the undisputed evidence showed that appellee had been working and earning substantial sums. As to Special Issue 9 it is contended by the second and fifth points that there was insufficient evidence to support the jury finding and such finding was contrary to the overwhelming weight and preponderance and that there was no evidence to support the jury finding.

Under appellant's contention of no evidence, insufficient evidence and such findings were contrary to the overwhelming weight and preponderance of the evidence we will consider the case under the rules pronounced by the Supreme Court in the case of In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

There were only three witnesses to testify in the case. They were appellee, his wife and his brother. Appellee's testimony substantially was that he was injured sometime during the night of September 16, 1964, about 8:30 p. m. as he was working at night. He was injured when he picked up an iron shaft and took about two or three steps when a pain hit him in the hip and he froze. The first pain was in his left hip and went all the way to his feet just on the one leg. He couldn't move or turn loose of the shaft as he just froze. His helper came and took the shaft out of his hands. He was to get off work at 2:00 a. m. but after being hurt he left at 10:00 p. m. and went home. He did not go back to work that afternoon as he was supposed to do but went to see a doctor. The doctor told him he thought he had a pulled muscle and gave him some tablets and showed him some exercises to do. He went home and got down on the floor to do the exercises and the pain hit him. It was an hour before he was able to get off of the floor. He then went to

another doctor that night (Thursday) around 6:30 p. m. The doctor took X-rays and suggested physical therapy. He took therapy treatments Friday and Saturday; stayed at home Sunday and went back to see the doctor Monday and the doctor put him in the hospital and put him in traction. They would take him out of traction and give him this therapy treatment twice a day and then put him back in traction. He was in traction eleven days twenty-four hours a day. He testified in detail as to other treatments given him by the doctors and then was operated on October 1, 1964, by Doctors Mays and Evans. The hospital record as to the operation was introduced which was as follows:

"Name of patient, H. D. Brewer, Room Number 626, 4112 31st Street, Lubbock Texas; age 31; sex, male; date 10-1-64; surgeon, Evans. Preoperative Diagnosis; Abnormal lumbar disc, L-4, -5, or L-5, S-1, left side. Postoperative diagnosis: Extruded intervertebral disc. L-5, S-1, left side. Name of operation: Excision of extruded intervertebral disc, L-5, S-1, left side; Exploration of the L-4, -5 interspace, left side. Procedure: After the patient had been anesthetized he was turned onto his abdomen with the usual shoulder and hip supports positioned. The low back was prepared with ether and merthiolate, and sterile drapes were applied. A midline incision was made in the spinous process of L-4 to S-1. Using subperiosteal dissection, the muscles were reflected laterally from the spinous processes of L-4, -5, and S-1. The laminectomy retractor was placed. Attention was directed to the L-5, S-1 interspace on the left. Here the inferior border of the lamina of L-5 was removed with a Love-Kerrison punch. The window of ligamentum flavum was then opened and enlarged with the Love-Kerrison punch. The s-1 nerve root and dural sac were pushed posteriorly and were rather tight. They were bound down to the tissues beneath them. They were dissected medial, and a hump of disc was evident. This had extruded through the annulus, but not through the posterior and longitudinal ligament. The ligament was opened and the fairly large chunk of extruded disc tissue was removed. The interspace was cleaned out with a curette and pituitary rongeurs, and the nerve root was decompressed into the foramen. It seemed fairly loose at the end of the procedure. Gelfoam was placed in the interspace and around the nerve root. A similar exposure was made at L-4, -5, on the left. Here there were considerably large veins laterally to the nerve root. The nerve root seemed to be slightly tight, however. The annulus was flat and not particularly soft. It was felt that it did not need to be opened, and gelfoam was placed over the ligamentum flavum defect. The bleeding points in the muscles were controlled with electrocautery. Wound was irrigated with saline and closed with the interrupted #00 silk in the deep fascia and interrupted #000 silk in the superficial fascia and skin. A dressing was applied, and the patient returned to the recovery room in good condition."

·He was in the hospital approximately ten days after the operation and then went to his father's home where he stayed a couple of weeks. His incision was ruptured and he went back to see the doctor and was put back in the hospital and was again operated on by Doctors Mays and Evans about December 3, 1964. He was in the hospital this time from December 3, 1964, to January 3, 1965. He then went to his brother's home and stayed until he went back to work around February 20, 1965. When he went back to work they gave him lighter work but he suffered and other employees helped him but he did the best he could, felt he had to work to make a living. He was not able to work and his back was giving him trouble and the doctor advised him to stay at home. He was off from work a week when he was fired about June 4. He has never had a job since. He applied at all the employment agencies there in Lubbock and went out on

several interviews at employers' premises and continued this effort to secure employment through June, July and the first half of August but couldn't find a place that would hire him. He also checked other places. He was unable to get a part-time job. He bought on credit some hay bailer equipment and tried to bail hay for other people but could only do that part of the time and would have to stop and lay down. He hasn't noticed any improvements and doesn't think he will ever be able to get and hold a job. Appellant offered no evidence other than to cross-examine appellee's witnesses.

Ervin Brewer, appellee's brother, testified that before his brother was operated on (after the accident) he was not able to get around freely and there were times that he was unable to or did not go to bed all night but would stay in a chair all night. Since the operation appellee cannot stoop or get around as fast. Appellee's wife testified that going on an automobile trip for about five hours they had to stop for the appellee to rest and that at the end of the trip he was completely miserable. She has a job and works and also has to help him in his hay bailing work. She further testified that he could not sleep at night and from her observation of his condition she didn't think he could obtain and hold a job in the usual task of work. All three witnesses gave other evidence as to appellee's condition. The evidence indicates that appellee has pain whether he works or not; that he is not able to do the work of a kind which he was doing when he was hurt because it requires lifting and other strenuous work which he cannot do.

■ It is the contention of appellant that there is no evidence that the duration of appellee's total incapacity was 300 weeks and no evidence that his partial incapacity would begin on June 24, 1970. We cannot agree that that is true. We know of no rule determining the extent of damages for pain and suffering in a common-law damage suit other than as assessed by a jury. We think the evidence here clearly shows that appellee was totally incapacitated for some period of time and also that he was partially incapacitated. Whether an employee is disabled in whole or in part is usually a question for the jury to determine. Commercial Casualty Ins. Co. v. Strawn, 44 S.W.2d 805 (Tex.Civ.App.—Waco, 1931, writ ref'd).

In the case of Traders & General Insurance Company v. Vaughn, 317 S.W.2d 800 (Tex.Civ.App.—Eastland, 1958, writ ref'd nre) the appellee was injured on April 11, 1956, and was discharged from work on June 1, 1956, which could not have been more than eight weeks. In that case the jury found appellee sustained total incapacity to work for a period of 35 weeks and thereafter suffered or would suffer partial incapacity for a period of 156 weeks. We think that case is directly in point here.

■ It is stated in Texas Employers Insurance Association v. Hoover, 382 S.W.2d 174 (Tex.Civ.App.—Dallas, 1964, writ ref'd nre) as follows:

"This case is another in a series of appeals that have been presented in recent years to this court, as well as other appellate courts of Texas, in which the insurance carrier has seriously sought to strike down a jury finding of permanent disability where the injured workman produced no medical testimony incorporating an opinion relating to permanency of the injury but relies solely upon lay testimony from which the jury may reasonably infer that the injuries will be permanent. On two occasions within the past year we have had occasion to reannounce the rule, which we believe to be now well established in Texas Jurisprudence, *that permanent disability may reasonably be inferred from circumstantial evidence produced by lay witnesses* and this is true even though such evidence is contradicted by the testimony of medical experts. Travelers Ins. Co. v. Wade, Tex.Civ.App., 373 S.W.2d 881, err. ref. n. r. e., and Travelers Ins. Co. v. Arnold, Tex.Civ. App., 378 S.W.2d 78, no wr. hist. In

those cases we had occasion to set forth numerous authorities which we deemed controlling and which we believe to apply to the instant appeal." (Emphasis ours.)

See also Travelers Insurance Company v. Arnold, 378 S.W.2d 78, (Tex.Civ.App.— Dallas, 1964, no writ) where it is stated:

"Any doubt we may have as to whether this evidence actually supports the jury finding of permanent incapacity must be resolved in favor of the right of the injured workman to receive compensation. Bailey v. American General Ins. Co., 154 Tex. 430, 279 S.W.2d 315, 318; Hargrove v. Trinity Universal Ins. Co., 152 Tex. 243, 256 S.W.2d 73."

Judgment of the trial court is affirmed.