**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellant,**

v.

**Ceacle W. DIMSDLE, Appellee.**

**No. 17257.**

Court of Civil Appeals of Texas.

Dallas.

April 11, 1969.

Rehearing Denied May 2, 1969.

Edward E. Crowell, Jr., of Gardere, Porter & DeHay, Dallas, for appellant.

Howard S. Smith, of Smith, Johnson & McDowell, Sulphur Springs, for appellee.

CLAUDE WILLIAMS, Justice.

Ceacle W. Dimsdle brought this action against Texas Employers Insurance Association, the workmen's compensation insurer for Mosher Steel Company, seeking to recover maximum benefits resulting from an injury sustained by him on March 14, 1967 while engaged in the course of his employment for Mosher Steel Company in Dallas County.

Trial was had before the court and a jury. In response to special issues submitted the jury found (1) that Dimsdle sustained an injury on March 14, 1967; (2) that such injury was accidental; (3) that Dimsdle was acting in the course of his employment with Mosher Steel Company when he sustained such injury; (4) that Dimsdle sustained total incapacity to labor on account of the injuries sustained by him; (5) that such total incapacity began on March 14, 1967; (6) that such total incapacity to labor is permanent; (8) that Dimsdle did not suffer partial incapacity as a result of his injuries; and (13) that payment of compensation to Dimsdle in weekly installments, instead of a lump sum, will result in manifest hardship and injustice.

Based upon this verdict the trial court rendered judgment in favor of Dimsdle for total and permanent disability benefits payable in a lump sum.

## FACTS

Since many of appellant's points of error are "no evidence" or "insufficient evidence" assignments it is deemed essential and desirable to summarize the relevant testimony presented. Only two witnesses were offered by appellee. No witnesses were offered by appellant.

Dimsdle testified that he was fifty-seven years of age; married and has two children. His education is limited. He has lived in Dallas several years and during that time he has been employed by Mosher Steel Company for about three years. His job with Mosher Steel was as a machinist, working on various types of drills and presses which included handling of various steel materials. He was working for Mosher Steel on March 14, 1967. On that date he and two other employees were engaged in picking up or lifting steel plates so that holes could be punched in them.

The steel plates were about two feet wide and four or five feet long. He testified that as he was picking up the plates he felt a sharp pain in the lower part of his back and that he immediately notified his foreman. The foreman told him to try to make it the rest of the day and he did so. He returned to work on March 15 and tried to work that day but during the night of the 15th he had a considerable amount of difficulty and pain in the lower part of his back and crossing over into his left leg. He could not rest normally that night and the next day he reported to his employer concerning his condition. His employer sent him to see a Dr. Jones. Dr. Jones gave him some tests and x-rays and saw him for a few days. He was next sent to Dr. Richardson, who examined him and gave him treatments, tests and x-rays. He continued to see Dr. Richardson who finally admitted him to St. Paul Hospital about the first of April. Upon being admitted in the hospital tests were run on him and a "myelogram" was performed following which he was advised that he had to be operated upon. He said that the myelogram caused him to have so much pain that he passed out and the doctors had to make a second effort in order to obtain satisfactory results from the test. He testified that he was operated upon by Dr. Patterson, Dr. Richardson, and Dr. Nash. He described the operation as being in the lower part of his back. He said that when he went into the hospital he was suffering from pain in the lower part of his back and into his left leg. He testified that following the operation he continued to have sensation of pain and was suffering pain at the time of the trial. He remained in the hospital for about fourteen days during which time Dr. Richardson saw him almost every day and Dr. Patterson and Dr. Nash saw him also. After leaving the hospital he returned to his home but continued to see Drs. Richardson, Nash, and Patterson, mostly Dr. Richardson. He last saw Dr. Richardson about six to eight weeks before the trial. The pain is in the lower part of his back which he described as a sharp pain and that pain goes down in his left leg and such pain is no better. At the time of the trial he was taking medicine prescribed by Dr. Richardson which was for relief of pain. He said that he talked with Dr. Nash and Dr. Patterson as to whether he should go back and try to work and that Dr. Patterson told him he could go back and try to perform his duties. He said he talked with Dr. Richardson as to whether he should return to work and that Dr. Richardson told him that he was his doctor and that he would tell him when he could return to work. He said he did go back to Mosher Steel and tried to get them to let him return to work but that he did not actually work. He said that he would have tried to work if they would have permitted him to do so but he did not think he was able. He said the reason he would have tried was that he needed to work because the insurance company had quit paying the $35 per week a few weeks before he tried to return to work. He was still under the care of Dr. Richardson, Dr. Patterson and Dr. Nash when the insurance company stopped paying the weekly payments of compensation. He had been able to live with the aid of some savings that he had accumulated and his wife had been working. Also, he, with the help of his brother, had started a small used car lot and wrecking yard at Winnsboro in East Texas, and that he spent part of his time at the yard. When asked if he knew of any type of work that he could do for the public, that is, get a job and keep it, he replied that he did not know of any because he could not qualify for work. He said that as far as his feelings are concerned and from what he knew about himself he was not able to get a job. As to his back condition he testified that since the pain was the same as it was before he had talked to Dr. Richardson and that Dr. Richardson told him he needed a further operation which he referred to as a "fusion". He said that he made a request of the insurance company to provide him with the additional operation but that he had received no reply from the company. The letter from Dimsdle's attor-

ney to the insurance company was introduced in evidence, a portion of which was as follows:

"As you no doubt are aware, the surgery which was performed on Mr. Dimsdle's back by your insurance company Drs. Tom Nash and Casey Patterson in April, 1967 was not successful. He continues to have disabling pain which is getting worse from day to day. In fact, he has reached a point in his condition to where he can obtain no sleep and rest unless under medication. No doubt you are further aware that your insurance company Dr. Richardson has recommended additional surgery since that April 1967 operation.

Mr. Dimsdle has asked me to request that your company furnish him further medical treatment, including an operation if it takes that to obtain some relief from his disabling pain."

On cross-examination he testified that in the operation of the used car lot at Winnsboro he spends some time over there and commutes occasionally between Dallas and Winnsboro, about a hundred miles, driving a car. He said his brother operates the yard when he is not there. He estimated he made about fifty dollars a week out of the used car lot.

Mrs. Lillian Reed, record custodian of St. Paul Hospital, identified the hospital records covering Mr. Dimsdle's stay in the hospital. These records reveal that upon admission to the hospital appellee was found to have marked muscle spasm in his back; acute low back sprain with signs of nerve root irritation and compression. The records reveal that this condition started about three weeks before when appellee had done some heavy lifting and such condition had become increasingly severe since that time. It was recommended that a myelogram be performed. Following an unsuccessful myelogram another was performed which revealed a condition in his spine which called for surgery. Surgery was accomplished and a large her-

niated nucleus pulposus of the lumbar 4–5 was found with an extruded portion lying in the disc canal and attached to the root. This condition was corrected but the spine was not fused at that time. He was discharged on the seventh day following his operation with prognosis "good, to be followed in the office."

In answer to request for admissions of fact appellant insurance company admitted that it had authorized and solicited Dr. John W. Jones, Dr. E. R. Richardson, Dr. Casey Patterson and Dr. Tom Nash, all of Dallas, to examine and treat Dimsdle for his injuries; that it had secured from each of the doctors named medical reports concerning Dimsdle's physical condition; that Dimsdle had been directed by his employer to report to the named doctors for examination and treatment.

## OPINION

In a barrage of points, twenty-one in number, appellant inveighs against the judgment. In its first point of error appellant charges that there was no evidence to support the *submission* of Special Issue No. 6 (inquiring concerning the permanency of appellee's total disability). In its second and third points of error appellant contends that the *answer* of the jury to Special Issue No. 6 was not supported by sufficient evidence or was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

■ In its argument under these points appellant expressly disclaims agreement with what it candidly concedes to be the often pronounced rule that permanency of disability in a workmen's compensation case may be established by lay testimony or by circumstances alone, without expert medical opinion testimony. This general rule is announced in 63 Tex.Jur.2d, § 429, p. 455, and has been followed in many cases. Texas Employers Ins. Ass'n v. Smith, 374 S.W.2d 287 (Tex.Civ.App., Beaumont 1963); Insurance Company of Texas v.

Anderson, 272 S.W.2d 772 (Tex.Civ.App., Waco 1955, writ ref'd n. r. e.); Fidelity & Casualty Co. of New York v. Moore, 333 S.W.2d 956 (Tex.Civ.App., Fort Worth 1960); Connecticut Indemnity Co. v. Henson, 388 S.W.2d 300 (Tex.Civ.App., Houston 1965); Trinity Universal Ins. Co. v. Farley, 408 S.W.2d 776 (Tex.Civ.App., Tyler 1966); Travelers Ins. Co. v. Beisel, 382 S.W.2d 515 (Tex.Civ.App., Amarillo 1964); Texas Employers' Ins. Ass'n v. Hamilton, 430 S.W.2d 285 (Tex.Civ.App., Fort Worth 1968, writ ref'd n. r. e.); Hartford Accident & Indemnity Co. v. Ferguson, 417 S.W.2d 376 (Tex.Civ.App., Fort Worth 1967); Fireman's Fund Ins. Co. v. Martinez, 387 S.W.2d 443 (Tex.Civ. App., Austin 1965, writ ref'd n. r. e.); and Travelers Ins. Co. v. Rudy, 340 F.2d 132 (5th Cir.1964). This court has had occasion to follow the same rule in four cases in recent years. Travelers Ins. Co. v. Wade, 373 S.W.2d 881 (Tex.Civ.App., Dallas 1963, writ ref'd n. r. e.); Travelers Ins. Co. v. Arnold, 378 S.W.2d 78 (Tex.Civ. App., Dallas 1964, no writ); Texas Employers Ins. Ass'n v. Hoover, 382 S.W.2d 174 (Tex.Civ.App., Dallas 1964, writ ref'd n. r. e.); and Texas Employers' Ins. Ass'n v. Washington, 437 S.W.2d 340 (Tex.Civ. App., Dallas 1969).

Appellant, while admitting the existence of the rule announced in these cases, argues that in this case appellee wholly failed to show by lay testimony of any kind whatsoever that his disability would extend permanently or beyond the date of the trial. It concedes that appellee's own testimony was that he could not "obtain and retain employment" but argues that this testimony fell short of establishing that the disability was permanent. Appellant says: "Nowhere else in the testimony does there appear any testimony, even by the Appellee himself, that he could not ever work, could not obtain work in the future, or was disabled permanently, and on the contrary, the Appellee's own testimony was to the effect that he felt a second operation would cure him, and he had earlier

announced that his intention was to have an operation immediately."

 We cannot agree with appellant's contention that the record is without any evidence which would support the submission to the jury of Special Issue No. 6. As has been declared in many cases, there is no fixed or definite rule of evidence by which a claimant in a workmen's compensation case is required to establish the fact that he has suffered an injury that caused permanent disability. Proof of duration and the extent of the disability resulting from injury is, like the assessment of damages in a personal injury action, at best an estimate which must be determined by a jury from all of the pertinent facts before it. Texas Employers' Ins. Ass'n v. Washington, supra. Permanent disability may reasonably be inferred from circumstantial evidence produced by lay witnesses and this is true even though such evidence is contradicted by the testimony of medical experts. Travelers Ins. Co. v. Wade, supra. Any doubt we may have as to whether the evidence actually supports the jury finding of permanent incapacity must be resolved in favor of the right of the injured workman to receive compensation. Travelers Ins. Co. v. Arnold, supra. We think it would be improper and objectionable for the appellee in this case, or any other layman, to give his opinion concerning the future extent of disability. This would certainly tend to invade the province of the jury on a material issue. While a medical expert is able to give his opinion on the question of future disability, yet the jury is not bound to accept such opinion and may disregard same.

 The testimony of appellee is undisputed or uncontroverted in any manner that he did sustain an injury to his back. He was placed under the care of four different doctors, all selected by the employer or the insurance company, and remained under the care of these doctors. At their suggestion and advice he was placed in the hospital and subjected himself to a serious operation. According to his testimony the

pain which was present before continued in his back following the operation. He says that his condition is no better and that in his opinion he is not able to obtain and retain a job. His willingness to submit to another operation in an effort to correct the condition in his back and appellant's obvious refusal to provide such surgery is strong evidence in support of the issue of permanency. The jury had every opportunity to see and observe appellee and to weigh and judge his testimony. The medical records and hospital records are undisputed. All of this testimony supports the submission of Issue No. 6 to the jury as well as the jury's answer thereto. We overrule appellant's points 1, 2 and 3.

▇▇▇▇▇ By its fourth and fifth points of error appellant argues that Special Issue No. 6 constituted a comment on the weight of the evidence because the undisputed evidence showed that the incapacity of Dimsdle was temporary in nature and terminated no later than February 1968. It also argues that the jury's answer to Special Issue No. 8 (the finding of no partial disability) is against the great weight and preponderance of the evidence. We cannot agree with appellant's contention as to either of these points. There is ample evidence in this record to demonstrate the continuance of appellee's total disability beyond the date argued by appellant. The fact that appellee has engaged in some sort of activity or work since the doctors released him from the hospital raises the issue of partial disability but is not conclusive thereof, as a matter of law. We overrule appellant's fourth and fifth points.

By its sixth point of error appellant attacks the trial court's action in permitting appellee to testify to remarks made to him by Dr. Richardson, contending that such statements constitute hearsay. Appellee testified that while he was in the hospital he was attended primarily by Dr. Patterson and Dr. Nash but that he was also still under the care of Dr. Richardson to whom he had been referred prior to the time he saw Drs. Patterson and Nash. He then testified:

"Q Did you have any conversations with Dr. Nash or Patterson as to whether you should go back and try to work?

A Yes, sir, I did.

Q What did they tell you?

A Well, Dr. Patterson told me I could go back and try to work.

Q Did you have any conversation following that with Dr. Richardson as to whether you should?

A Yes, sir, I did.

Q What did Dr. Richardson tell you?"

(Objection made that the answer would call for hearsay.)

\* \* \* \* \* \*

"Q Judge says you may answer that question.

A Dr. Richardson told me that he was my doctor and he would tell me when I could go back to work."

As stated above the appellant admitted that it had authorized and solicited Dr. E. R. Richardson to examine and treat appellee.

▇▇▇▇ Under the circumstances here presented we are of the opinion that appellee's testimony relating to Dr. Richardson's statements made to him were admissible as an exception to the general hearsay rule. It is quite clear that the statements of Dr. Richardson were made by him to appellee as a part of his professional duties in connection with examining and taking care of appellee. He was employed by appellant to do this very thing. The identical contention as now asserted by appellant was expressly overruled by the Austin Court of Civil Appeals in the recent case of Argonaut Southwest Ins. Co. v. Morris, 420 S. W.2d 760 (Tex.Civ.App., Austin 1967, writ

ref'd n. r. e.). There, under an almost identical factual situation, the court said:

"The admissions and testimony are sufficient to support an implied finding that the doctors named were agents of appellant. It is our opinion that the statements made by these doctors regarding the physical condition of appellee were admissible. See Vineyard v. Texas Employers' Ins. Association, 263 S.W.2d 675, Tex.Civ.App., Dallas, writ ref. n. r. e.; *Bituminous Casualty Corporation v. Jordan,* 351 S.W.2d 559, Tex.Civ.App. Waco, n. w. h."

Appellant's point 6 is therefore overruled.

In its seventh point of error appellant complains of the trial court's action in permitting appellee to answer a leading and suggestive question. Appellee testified:

"Q Did you go back to work?

A No, sir, I didn't.

Q Would you have tried if they would have permitted it?

A Yes, sir, I would.

MR. CROWELL: This is leading and suggestive.

THE COURT: Overruled."

 While it may be conceded that the second question propounded by appellee's counsel may have been leading we observe no reversible error flowing therefrom. It has been held that to permit counsel to ask leading questions on direct examination is a matter that is largely within the discretion of the trial judge. Moreover, any error in permitting leading questions is generally not prejudicial where the questions propounded relate to facts which were established by other evidence, or where substantially the same evidence was received without objection. 62 Tex. Jur.2d, Witnesses, § 147, pp. 18–20–21; *Rule 434, Texas Rules of Civil Procedure.*

While appellee was testifying on direct examination the following transpired:

"Q Mr. Dimsdle, did you feel like you was able to work, or why did you go back there and try?

A Well, I didn't think I was able, but I knew I needed to work.

Q Why?

A Because there wasn't any pay at $35.00 a week.

MR. CROWELL: Your Honor, I object to that.

MR. SMITH: We believe that is permissible testimony. He said because the insurance company wouldn't pay the $35.00 a week.

MR. CROWELL: Your Honor, I object to Mr. Smith's statement.

THE COURT: Overruled; motion for mistrial overruled."

 Appellee had testified that the weekly compensation payments of $35 a week had been stopped by the insurance company before the time he went back to try to go to work at Mosher Steel. Appellant, in its eighth point of error, argues that the statement made by Attorney Smith, representing appellee, was unsworn testimony concerning the payment of weekly payments of compensation, and therefore reversible error. We cannot agree. While there did appear to be some confusion concerning what appellee had said concerning the payment of the weekly payments of compensation, yet we do not feel that counsel's statement, obviously made to clarify his client's previous statement, was of such nature as to constitute error or, if so, reversible error. Rule 434, T.R.C.P.

Appellant's points 9 through 17, inclusive, are "no evidence" and "insufficient evidence" points attacking Special Issues 1, 2 and 4. Issue 1 inquired as to whether appellee sustained an injury, Issue 2 whether such injury was accidental and Issue 4 as to whether total disability resulted therefrom.

A casual reading of the facts set forth above will demonstrate that there was ample evidence to support the jury's finding to the effect that appellee did sustain a personal injury; that it was accidental, and that it resulted in total disability. Appellee testified concerning the details of his injury on March 14, 1967. No one questioned this testimony. His employer, and the insurance company, apparently accepted appellee's statement concerning the injury and results thereof and immediately provided him with medical care and attention, including a radical surgical operation. In addition thereto the insurance company assumed its obligation under the Workmen's Compensation Law of Texas by providing weekly payments of $35 per week until after appellee was discharged from the hospital. Appellant's points are without merit and are overruled.

By its eighteenth to twenty-first points of error, inclusive, appellant assails the submission and the answer of the jury to Special Issue No. 13, relating to the payment of compensation in a lump sum rather than in weekly payments, as being entirely without support in the evidence or contrary to the great weight and preponderance of the evidence. We overrule these points. There was ample evidence to support the answer of the jury to Special Issue No. 13. Appellee testified that he had incurred indebtednesses since the time of his injury and that if he received his compensation in a lump sum he intended to pay his bills and take care of his family. He also testified concerning employment of attorneys and a contract to pay them a percentage of his recovery. He said:

"Q And you feel like that out of the maximum of $35.00 a week that you would have difficulty in living and paying your bills and fees unless you recover it in a lump sum. Is that a fair statement?

A That's right."

While it is true that appellee testified that he had done some work and earned about $50 a week such merely presented facts for the jury to pass upon in answering the issue.

Having carefully examined all of appellant's points of error and finding the same not to reflect reversible error the judgment of the trial court is affirmed.

Affirmed.